## In re POWERS

Docket No. 170851. Submitted October 19, 1994, at Grand Rapids. Decided February 6, 1995, at 9:55 A.M.

The Department of Social Services petitioned the Montcalm County Probate Court to take jurisdiction of Kayla Marie Powers, the minor child of Rodney Powers and Nikki Lynn Strayer, an unmarried couple. The DSS alleged that Powers would abuse Kayla like he abused Aaron Strayer, Nikki Strayer's son by another man. The court, Edward L. Skinner, J., pursuant to a jury verdict, took jurisdiction of Kayla and placed her with the DSS. The court thereafter terminated Rodney Powers' parental rights to Kayla. Rodney Powers appealed.

The Court of Appeals *held*:

1. The allegations set forth in the petition and the testimony in support of those allegations more than sufficiently established probable cause for the probate court's jurisdiction.

2. Anticipatory neglect or abuse, the proposition that how a parent treats one child is probative of how that parent may treat another child, as enunciated in *In re Dittrick*, 80 Mich App 219 (1977), provides an appropriate basis for invoking probate court jurisdiction under MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2).

3. MCL 712A.19b(3)(b)(1); MSA 27.3178(598.19b)(3)(b)(1), which provides that the rights of a parent to a child may be terminated if the child or a sibling of the child has suffered physical or sexual abuse by the parent and there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home, is not a proper ground for terminating Rodney Powers' parental rights to Kayla on the basis of his abuse of Aaron inasmuch as Rodney is not the father of Aaron, nor is he a person legally responsible for Aaron's care.

4. MCL 712A.19b(3)(c)(1); MSA 27.3178(598.19b)(3)(c)(1), which provides that the rights of a parent to a child may be terminated if the parent was a respondent in a child protective

REFERENCES

Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 49.

See ALR Index under Children.

proceeding, if 182 days or more have elapsed since the issuance of an initial dispositional order, and if the conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the condition will be rectified within a reasonable time considering the age of the child, is a proper basis for terminating Rodney Powers' parental rights to Kayla. Another ground for termination of those rights is MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g), which provides that parental rights may be terminated if the parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the age of the child.

5. There was clear and convincing evidence to support the termination of Rodney Powers' parental rights to Kayla. The probate court therefore did not abuse its discretion in terminating those rights.

Affirmed.

PARENT AND CHILD — ANTICIPATORY NEGLECT OR ABUSE — PROBATE COURT JURISDICTION.

Anticipatory neglect or abuse, i.e., how a parent treats one child is probative of how that parent may treat another child, provides an appropriate basis for invoking the jurisdiction of the probate court over a child whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity of a parent, is an unfit place in which to live (MCL 712A.2[b][2]; MSA 27.3178[598.2][b][2]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Larry Hachman,* Prosecuting Attorney, *Andrea A. Evanski,* Assistant Prosecuting Attorney, for the Department of Social Services

*Arney E. Mustonen,* for Rodney Powers.

*Thomas L. Wilson,* for Kayla M. Powers.

Before: MURPHY, P.J., and G. S. ALLEN\* and H. A. BEACH,\*\* JJ.

\* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1994-7.

\*\* Circuit judge, sitting on the Court of Appeals by assignment.

G. S. ALLEN, J. In this case the parties ask us to determine whether the *Dittrick* doctrine, as set forth in *In re Dittrick,* 80 Mich App 219; 263 NW2d 37 (1977), applies only to parents who abuse or neglect *their own children.* The issue raised is one of first impression. We conclude that the principle of anticipatory neglect (or abuse) should be extended to a live-in boyfriend who has abused a sibling of a child, and affirm the decision of the probate court.

Respondent Rodney Powers appeals as of right the July 1, 1992, order of the Montcalm County Probate Court determining jurisdiction and the October 26, 1993, order of that court terminating parental rights to respondent's daughter, Kayla Marie Powers (born June 29, 1992). The court's termination of parental rights was based on MCL 712A.19b(3)(b)(i); MSA 27.3178(598.19b)(3)(b)(i) (a sibling of the child has suffered physical injury caused by a parent), MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i) (the conditions that led to the adjudication continue to exist and there is no reasonable likelihood that they will be rectified within a reasonable time), and MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g) (the parent, without regard to intent, fails to provide proper care or custody and there is no reasonable expectation that the parent will be able to do so within a reasonable amount of time).

Respondent, the live-in boyfriend of Nikki Lynn Strayer, lived with Strayer and her infant son, Aaron Strayer (born March 19, 1991) from the date Aaron was five or six months old until Aaron was removed from Strayer's care on December 26, 1991, by order of the Montcalm County Probate Court. The grounds for Aaron's removal were Strayer's inability to care properly for Aaron and respondent Powers' violent conduct toward Aaron

resulting in severe injuries to Aaron's leg when Powers removed Aaron from his crib.[1]

Following Aaron's removal, respondent continued to live with Strayer, who some six months later, on June 29, 1992, gave birth to Kayla Marie Powers. It is undisputed that Johnnie Lee Archer is the father of Aaron, and that respondent Powers is the father of Kayla. It is also undisputed that Strayer was not married to either Archer or Powers.

On July 1, 1992, the Department of Social Services petitioned the Montcalm County Probate Court for jurisdiction over Kayla. The petition alleged, inter alia, that Strayer could not be and was not a suitable parent for Aaron, that Strayer was neglectful or abusive to Aaron, and that Kayla would be subjected to the same improper care that was given to Aaron.

At the conclusion of the hearing on July 1, 1992, the probate court found that in light of the severe injuries to Aaron, coupled with Strayer's lack of readiness to care for Kayla, there was a substantial risk of harm to Kayla should she remain with Strayer. However, the court made no specific findings regarding respondent Powers. The probate court authorized the petition, placed Kayla with the DSS, and ordered supervised visitation of Kayla by Strayer and Powers.

On August 4, 1992, the DSS amended its petition to include allegations against respondent Powers that Powers was cruel to Aaron in that he had picked up the child in a harsh manner when he knew Aaron's leg was caught in the side of the crib. It was also alleged that Strayer had stated that respondent can be violent. The DSS further alleged that pursuant to the *Dittrick* doctrine, the

---

[1] *In re Strayer,* unpublished opinion per curiam of the Court of Appeals, decided January 19, 1995 (Docket No. 171046).

care of one child may be imported to all children living in the household. See *Dittrick, supra* at 222.

On August 19, 1992, a jury trial was held in the probate court to determine whether the allegations in the amended complaint were true, and whether the probate court should take jurisdiction over Kayla with respect to respondent Powers. At the close of the prosecution's proofs, respondent Powers moved for a directed verdict on the ground that MCL 712A.19b(3)(b)(i); MSA 27.3178(598.19b)(3)(b)(i) did not apply to him. Powers argued that the statute does not apply to a person who is not a parent of the abused or neglected sibling (i.e., Aaron) or was not a party to the proceedings involving the abused or neglected sibling. The court ruled that respondent Powers was Aaron's custodian, and in such role acted as a surrogate father. The court ruled that Powers was a "parent" to Aaron under MCR 5.903(12). The court further found that because Powers was a parent to Aaron, the *Dittrick* doctrine did apply to him.

On August 20, 1992, after less than one hour of deliberations, the jury returned with a finding of probate court jurisdiction over Kayla with respect to both Strayer and Powers. On August 25, 1992, the probate court ordered Kayla placed under its jurisdiction and placed her with the DSS.

On September 14, 1992, a dispositional hearing was held in the probate court, and all parties agreed that to encourage bonding and appropriate parenting, respondent Strayer and Kayla would be placed in the same foster care home, and respondent Powers would be given weekly visitation rights. However, at a probate court review hearing held on March 8 and 11, 1993, proofs disclosed that Strayer had moved out of the foster care home and was again living with Powers. Review hearings conducted on May 5 and June 16, 1993,

continued to disclose that neither Strayer nor Powers was making more than "very minimal" progress in correcting the conditions that led to probate court jurisdiction, and that Powers appeared "barely able to care for himself let alone a child." On July 28, 1993, the DSS petitioned for termination of Strayer's and Powers' parental rights to Kayla.

At an October 6, 1993, hearing on the petition, extensive testimony was presented by all parties. On October 26, 1993, the probate court terminated respondent Powers' parental rights to Kayla. Respondent Powers raises three grounds for reversal.

I

Respondent first argues that the July 1, 1992, order of the probate court taking jurisdiction was in error. However, respondent's brief contains no citation in support of such a claim. All that is offered to support respondent's first argument is the flat statement that "at no point in the transcript does it state that there is probable cause to authorize the petition against Rodney Powers."

We find that the allegations set forth in the DSS' petition and the testimony in support of those allegations (in particular the testimony of witness Patricia Kuhn) more than sufficiently established probable cause for the court's jurisdiction.

Further, a probate court's jurisdiction in parental rights cases can be challenged only on direct appeal, not by a collateral attack. *In re Hatcher,* 443 Mich 426, 439; 505 NW2d 834 (1993). In the instant case, respondent neither directly appealed the probate court's exercise of jurisdiction nor requested a rehearing of this issue during the time the court had jurisdiction over the child or within twenty days after the order terminating parental

rights was entered. MCL 712A.21; MSA 27.3178(598.21); *Hatcher, supra* at 436. Accordingly, respondent no longer has the ability to challenge the probate court's exercise of jurisdiction. *Id.* at 444.

II

Respondent argues that the probate court erred in applying the *Dittrick* doctrine because: (1) the doctrine applies only to change of custody situations, not to probate court jurisdiction, and (2) respondent was not a party to the proceedings involving Aaron and was not the parent, custodian, or caretaker of the child (Aaron) who was actually abused and neglected.

Respondent cites no case law or other authority in support of his first argument. Consequently, the issue is effectively abandoned. *People v Hunter,* 202 Mich App 23, 27; 507 NW2d 768 (1993). However, this Court need not rely on abandonment because respondent's first argument lacks substantive merit. The *Dittrick* doctrine stems from *In re Dittrick, supra,* and related cases[2] standing for the proposition that how a parent treats one child is certainly probative of how that parent may treat other children. The doctrine and supporting case law is otherwise known as anticipatory neglect. This jurist was the author of *In re Dittrick.* At pages 222-223, that opinion squarely provides that "probate court jurisdiction in such matters" is acquired pursuant to statute when any child under age seventeen is found within the county:

(2) whose home or environment, by reason of

---

[2] *In re LaFlure,* 48 Mich App 377; 210 NW2d 482 (1973); *In re Futch,* 144 Mich App 163; 375 NW2d 375 (1984); *In re Andeson,* 155 Mich App 615; 400 NW2d 330 (1986); *In re Parshall,* 159 Mich App 683; 406 NW2d 913 (1987).

neglect, cruelty, drunkenness, criminality or de-
pravity *on the part of a* parent, guardian *or other
custodian,* is an unfit place for such child to live
in. [MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2).
Emphasis added.]

Consistent with *Dittrick,* we find that the principle
of anticipatory neglect (or, in this case, anticipa-
tory abuse) may provide an appropriate basis for
invoking probate court jurisdiction.[3]

We find respondent's second argument, that *Dit-
trick* does not apply because he was "not a party
to" the proceedings involving Aaron, to be disin-
genuous. Respondent became tangentially involved
in those proceedings when he was cited as the
person responsible for Aaron's injuries. Proofs in
the case of *In re Strayer,* unpublished opinion per
curiam of the Court of Appeals, decided January
19, 1995 (Docket No. 171046), and in the instant
case, clearly identified respondent as the individ-
ual who abused young Aaron.

However, respondent's argument that *Dittrick*
does not apply because he was not Aaron's "par-
ent" presents a more serious question. *Dittrick,
supra,* and all the cases cited at n 2, *supra,* in-
volved situations where the respondent was the
parent of both the children involved. Thus, on this
issue, respondent presents an issue of first impres-
sion.

Respondent's rights were terminated pursuant
to the following provisions of MCL 712A.19b(3);
MSA 27.3178(598.19b)(3):

The court may terminate the parental rights of
a *parent* to a child if the court finds, by clear and
convincing evidence, 1 or more of the following:

[3] In *Dittrick,* we concluded that the probate court lacked jurisdic-
tion because the DSS' petition for temporary custody was filed before
the child was born. However, in the instant case the DSS waited until
Kayla was born before filing its petition.

* * *

(b)' The child *or a sibling of the child* has suffered physical or sexual abuse under . . . the following circumstances:

(i) *A parent's act* caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in *the parent's* home.

* * *

(c) *The parent* was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

(i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the age of the child.

* * *

(g) The *parent,* without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that *the parent* will be able to provide proper care and custody within a reasonable time considering the age of the child. [Emphasis added.]

The probate court terminated respondent's parental rights pursuant to three separate statutory provisions, MCL 712A.19b(3)(b)(i), (c)(i), and (g); MSA 27.3178(598.19b)(3)(b)(i), (c)(i), and (g). However, respondent's argument here addresses only the applicability of subsection 3(b)(i).

The probate court found subsection 3(b)(i) applicable after determining that respondent should be considered the "parent" of Aaron because of respondent's role as Aaron's custodian. The court relied upon the definition of "parent" set forth in

MCR 5.903(12), which includes a child's custodian.[4] We find that the court erred when it ruled that respondent was Aaron's parent for purposes of subsection 3(b)(i) because, contrary to MCR 5.903(12), nothing in the proofs disclosed that respondent Powers ever was "legally responsible" for Aaron. However, this Court will not reverse a trial court's decision if the right result is reached for the wrong reason. *Paul v Bogle,* 193 Mich App 479, 492; 484 NW2d 728 (1992).

This is a difficult case because of two competing considerations. Common sense dictates that the principle of anticipatory abuse discussed in *Dittrick, supra,* should also apply in this case despite the fact that respondent Powers was not the father, guardian, or legal custodian of the previously abused child (Aaron). On the other hand, a decision to terminate parental rights must be in accordance with a specific statutory provision under MCL 712A.19b(3); MSA 27.3178(598.19b)(3). In order to apply subsection 3(b)(i) of the statute to this case, there would have to be a determination that respondent Powers was a "parent" of the previously abused child. Although it may be in the best interests of the children of this state to construe subsection 3(b)(i) to apply to a live-in boyfriend such as respondent Powers, the plain language of the statute indicates that the Legislature could not have intended such an interpretation when it enacted the statute.[5]

While we find that subsection 3(b)(i) does not

---

[4] Under the court rule, the word "parent" means "a person who is legally responsible for the control and care of the minor, including a mother, father, guardian, or custodian, other than a custodian of a state facility, a guardian ad litem, or a juvenile court-ordered custodian." MCR 5.903(12).

[5] Interestingly, this Court also was faced with a question of legislative intent in *Dittrick, supra* at 223, concerning whether the probate court could take jurisdiction over an unborn child.

strictly apply to this case, we find that the *Dittrick* doctrine should not be limited to situations where parents abuse or neglect *their own children.* The doctrine of anticipatory neglect or abuse should be extended to guarantee the protection of a child who is not yet born, i.e., because of the past conduct of another person, there is good reason to fear that the second child, when born, will also be neglected or abused. As in *Dittrick, supra* at 223, we again urge the Legislature to consider appropriate amendments of the Probate Code in the best interests of the children of this state.

In this case, while our expansion of the principle of anticipatory abuse may not fit precisely within MCL 712A.19b(3)(b)(i); MSA 27.3178(598.19b)(3)(b)(i), we might look to another statutory provision, MCL 712A.19b(3)(i); MSA 27.3178(598.19b)(3)(i), for further guidance. Applying subsection 3(i) to this case, when the probate court terminated respondent Powers' parental rights to Kayla, the parental rights to Kayla's sibling, Aaron, had already been terminated. Further, also pursuant to the statute, there was abundant evidence that prior attempts to rehabilitate respondent Powers were unsuccessful. While there is again some question about legislative intent when applying subsection 3(i) to this case involving a live-in boyfriend, we find that this provision also permits the drawing of inferences based upon the history of the child's home environment.

However, regardless of the applicability of subsections 3(b)(i) and 3(i), the probate court also terminated respondent Powers' parental rights pursuant to MCL 712A.19b(3)(c)(i) and (g); MSA 27.3178(598.19b)(3)(c)(i) and (g). At the very least, respondent's prior abusive activity toward Aaron would certainly be relevant to his ability to provide proper care and custody for Kayla under

subsection 3(g). Further, subsection 3(c)(i) also provides an independent basis for terminating respondent's parental rights.

In the instant case, Aaron was a sibling of Kayla, sharing the same mother (Strayer). Proofs at the preliminary and adjudicative hearings disclosed that respondent Powers was living with Strayer and nine-month-old Aaron when Aaron sustained multiple fractures of the left leg, that respondent admitted he may have caused the fractures, and that when respondent would tend to Aaron when he was crying, Aaron would scream at his highest pitch. Proofs further showed that at the time Kayla was born, Strayer and Powers had resumed living together and that neither Strayer nor Powers was making satisfactory progress in being able to provide for Kayla.

To hold, as urged by respondent, that the *Dittrick* doctrine applies only to parents who abuse or neglect their own children is contrary both to the mandate that the statute be liberally construed, MCL 712A.1(2); MSA 27.3178(598.1)(2), and to the rule that the purpose of child protective proceedings is to protect the child. *In re Marin,* 198 Mich App 560, 564; 499 NW2d 400 (1993).

III

Lastly, respondent contends that the probate court erred in finding that sufficient proofs were presented to terminate respondent's parental rights to Kayla. In particular, respondent avers that although there may be some circumstantial evidence to support the probate court's findings, this Court will, on review of the record, be left with a firm and definite conviction that the probate court made a mistake. To the contrary, the probate judge's fourteen-page opinion leaves us with a firm conviction that he made no mistake.

Dr. Donald Boyd, a psychologist, testified that respondent Powers suffered from the following problems: (1) a closed-head injury; (2) episodic substance abuse; (3) major depressive episodes (intermittent); and (4) developmental disability.

Pam Robinson, respondent's therapist, agreed with Dr. Boyd that respondent had difficulty planning and cognitively organizing complex tasks, and she expressed concern over Powers' parenting ability.

Parenting instructor Diana Surrell testified that Powers was not able to follow instructions, had a low frustration level, and became upset when Kayla cried. Respondent argues that Dr. Boyd and Pam Robinson agreed that respondent had the ability to improve if he was persistent in his efforts. However, our reading of their testimony indicates that it would take too long at the slow rate at which respondent was progressing. All witnesses agreed that despite his (slow) progress, respondent was not capable of adequately parenting a child.

Finally, our review of respondent's own testimony indicates that respondent lacked the capacity to care adequately for Kayla. Accordingly, we hold that the probate court did not abuse its discretion in terminating respondent's parental rights.

Affirmed.