*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re CASTANEDA, Minors.

UNPUBLISHED
January 16, 2020

No. 350236
Lapeer Circuit Court
Family Division
LC No. 19-012685-NA

Before: RIORDAN, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his minor children: MLC, JTC, RC, EDC, and ABPC[1] pursuant to MCL 712A.19b(3)(b)(*i*) and (j). We affirm.

## I. FACTS

Petitioner, the Department of Health and Human Services ("DHHS"), sought termination of respondent's parental rights to his five minor children after a nonrelative, 17-month-old child left in his care was admitted to the hospital.

BB and her two children, LB and EM, moved in with respondent, respondent's wife, SMC, and their five minor children. Subsequently, respondent remained at home one day to watch his four minor children[2] and LB while BB and SMC went to the store. LB was fine when BB and SMC left the house, but when they returned home one hour later, LB was nonresponsive, lethargic, and was bruised on her ears, face, chin, and legs. BB immediately took LB to the

---

[1] At the time of the termination hearing, the children's respective ages were 8 years old, 5 years old, 2 years old, 18 months old, and 18 months old.

[2] At that time respondent's oldest child, MLC was sent to live with a relative out of state because MCL required a more structured environment. MCL had missed so many days of school that she remained in kindergarten when she should have been in third grade.

hospital where a CT scan showed that LB had a large front subdural hemorrhage. LB's doctor believed that LB's bruises and subdural hemorrhage were nonaccidental. Some of the bruises under LB's chin looked like thumbprints, and the pattern of the bruise on LB's thigh appeared to be from a bite mark from an adult human. LB was diagnosed with anemia, posttraumatic seizures, developmental disorders of speech and language, and contusions on the scalp, head, and both thighs. At the time of the termination proceedings, due to her injuries, LB was legally blind, could not walk, struggled to crawl, and did not talk as much as she used to.

The same day that LB was taken to the hospital, DHHS workers visited respondent's home and found it covered in garbage. The walls and carpet were splattered with feces, there were multiple cats inside the house, there was an overwhelming odor of garbage and rotten food, and the children's toys were scattered throughout the house, amongst the garbage, dirty diapers, and feces.

A sergeant detective of the Lapeer County Sheriff's Office, was dispatched respondent's home that same day. Respondent initially told the detective that he did not know what happened to LB and blamed LB's injuries on his two-year-old son RC. Eventually, respondent admitted that LB was in his arms when he struck her head against the toilet. Respondent said that he did not call 911 because he was afraid that he would get in trouble even though he saw that LB was unconscious, bruised, and bleeding from the head. Respondent was arrested and charged with first-degree child abuse, MCL 750.136b, and assault with intent to murder, MCL 750.83.

The DHHS filed the instant petition, requesting the court to take jurisdiction over the minor children pursuant to MCL 712A.2(b)(1) and (2) and terminate respondent's parental rights. Following an evidentiary hearing, the trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*) and (j). This appeal followed.

## II. STATUTORY GROUNDS

Respondent first argues that the trial court committed error requiring reversal when it found that statutory grounds for termination of his parental rights existed pursuant to MCL 712A.19b(3)(j). We disagree.

We review the trial court's findings regarding statutory grounds for clear error. MCR 3.997(K); *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012). A finding is clearly erroneous if the reviewing court is "left with a definite and firm conviction that a mistake has been made." *In re Gonzales/Martinez*, 310 Mich App 426, 430-431; 871 NW2d 868 (2015). We must defer to the trial court's special ability to judge the credibility of witnesses. *In re Gach*, 315 Mich App 83, 93; 889 NW2d 707 (2016).

The petitioner has burden of showing that the allegations in the petition establish a statutory basis for termination by clear and convincing evidence. MCR 3.977(A)(3); MCR 3.997(E)(3); MCR 3.977(F)(1)(b); MCR 3.977(H)(3)(a); *In re Trejo*, 462 Mich 341, 350, 355; 612 NW2d 407 (2000). Under MCL 712A.19b(3)(j), a trial court may terminate parental rights if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

LB suffered life-threatening injuries while in respondent's care. LB arrived at the hospital with a large front subdural hemorrhage and bruises all over her body. LB suffered "a traumatic subdural hemorrhage with loss of consciousness of unspecified duration," anemia, posttraumatic seizures, developmental disorders of speech and language, and contusions on the scalp, head, and both thighs.

Respondent does not dispute that LB's subdural hemorrhage was caused while she was alone with him. Respondent claims that LB's injuries were the result of an accident and that some of the bruises were caused outside of the one hour that respondent was alone with LB. However, the evidence demonstrates otherwise. Respondent initially blamed LB's bruises and bite marks on his two-year-old son, RC, then he admitted that he accidentally hit LB's head on the toilet bowl while he was bending over to pick up a firearm off the floor that his son, JTC, had been playing with before he tossed it onto the bathroom floor. Respondent also eventually admitted that he bit LB earlier in the day while the two were playing. LB's doctors testified that her bruises were due to recent nonaccidental trauma, but that it was unlikely that LB's bruises could be caused by a single hit to a porcelain toilet given that the bruises were different shapes, sizes, and in different locations, and the irregular pattern of bruising and number of bruises on LB's body indicated intentional harm. The bruises on LB's ears were another strong indicator of physical abuse, and the pattern of the bruise on LB's lateral left thigh appeared to be from a bite mark from an adult human. LB's subdural hemorrhage was consistent with a car accident or some form of forceful blunt trauma.

Additionally, respondent's failure to immediately seek help further demonstrates that there is a reasonable likelihood that the minor children would be harmed if returned to respondent's care. " '[H]ow a parent treats one child is certainly probative of how that parent may treat other children.' " *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014), quoting *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973). The doctrine of anticipatory neglect, as it concerns MCL 712A.19b(3)(j), is not limited to a respondent's treatment of children who are his offspring. *In re Powers*, 208 Mich App 582, 589; 528 NW2d 799 (1995), superseded in part by statute on other grounds as stated in *In re Jenks*, 281 Mich App at 517 n 2. Respondent reported to the detective assigned to the case that he did not call 911 right away because he was afraid. Instead, respondent researched head injuries on the internet for 45 minutes. Respondent refused to call for help even after LB stopped breathing. Instead, respondent performed CPR and tried feeding LB Spaghetti-O's and water. LB was a 17-month-old child that lived with respondent when respondent inflicted severe life-threatening injuries upon her and then failed to immediately seek help. At the time of the termination hearing, all of the minor children were under the age of nine years old and at risk of similar injury, whether by intentional harm or by respondent's failure to seek critical medical care. Accordingly, there is a reasonable likelihood that the minor children will be harmed if returned to respondent's care.

Furthermore, at the time of the incident, respondent's home was in deplorable condition. Dirty diapers, food, dirty dishes, garbage, and toys covered the floor. Garbage and dirty dishes covered the kitchen countertops. An unidentified substance covered the bottom of refrigerator and leaked onto the floor. There were fruit flies and gnats in the kitchen despite the cold weather. Dirty diapers, garbage, and empty soda bottles were found in the master bedroom. There were multiple cats inside the house. Cat feces were discovered on the floors throughout the house. Popcorn kernels littered the floors. Children's scribbles covered several walls. Urine

stains marked the floors. The minor children's toys were scattered amongst the garbage and cat feces. The rooms where the minor children appeared to sleep were in the same condition as the rest of the house. Nine witnesses, including three of respondent's family members and SMC, testified that home was messy, cluttered, and unsanitary. Despite regular help from family members, the respondent's house was rarely clean. While respondent cannot be held solely responsible for the conditions of the home, he has responsibility nonetheless. Respondent, as a parent of multiple young children, was responsible for providing a home that is hygienic and safe regardless of SMC's actions. Thus, the fact that the DHHS only sought to terminate respondent's parental rights is irrelevant, especially when LB's injuries are considered. Accordingly, the trial court properly found a statutory ground to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(j).[3]

### III. BEST INTERESTS

Respondent next argues that the trial court failed to find by a preponderance of the evidence that it was in the best interests of the minor children to terminate his parental rights. We disagree.

This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016). See also MCR 3.977(K). A finding is clearly erroneous if this Court is left with a "definite and firm conviction that a mistake has been made." *In re LaFrance Minors*, 306 Mich App at 723. Additionally, this Court must defer to the trial court's "special ability" to evaluate the credibility of witnesses. *Id*.

"Even if the trial court finds that [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App at 434; citing MCL 712A.19b(5) and *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The best-interests analysis focuses on the child rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016), citing *In re Moss*, 301 Mich App at 87. To determine whether the termination of a parent's rights is in the child's best interests, the trial court should weigh all of the available evidence, *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), and consider the entire record, including any evidence introduced by any party, *In re Medina*, 317 Mich App at 237, citing *In re Trejo Minors*, 462 Mich at 353, superseded by statute on other grounds in *In re Moss*, 301 Mich App at 83. Factors that the trial court may consider in making this determination include "the child's bond to the

---

[3] Respondent challenges the trial court's finding that statutory grounds existed pursuant to MCL 712A.19b(3)(b)(*i*) (a sibling of the child has suffered physical injury caused by the parent). Although there is some merit to respondent's argument that the trial court erred in its finding because LB was not respondent's child or the sibling of the minor children, we need not consider this argument because termination was proper pursuant to MCL 712.19b(3)(j). "Only one statutory ground need be established by clear and convincing evidence to terminate" respondent's parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Medina*, 317 Mich App at 237, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

The trial court recognized that respondent shares a bond with the minor children, but ultimately determined that the severity of the risk that respondent poses to the minor children warranted termination. The evidence demonstrates that respondent poses a serious risk of harm to the minor children in numerous ways. The injuries that respondent inflicted upon LB demonstrates that he poses a risk of intentional physical harm to the minor children. Respondent's failure to seek medical help when LB was injured is another risk of harm, and his failure to provide a sanitary, safe household is yet another risk. The evidence demonstrates that respondent is unable to provide the minor children with a stable and sanitary home, or to provide the minor children with sufficient structure. MLC, who was eight years old at the time of the evidentiary and termination hearing, had missed so many days of school that she was still in kindergarten even though she should have been in third grade, and had moved out of state to live with a great aunt who could provide her with more structure. At the time of the evidentiary and termination hearing, the minor children were living with their grandparents and thriving. Accordingly, the trial court properly terminated respondent's parental rights because it was in the best interests of the minor children.

## IV. CONCLUSION

The trial court did not commit error requiring reversal when it found that statutory grounds existed pursuant to MCL 712A.19b(3)(j) to terminate respondent's parental rights to the minor children, and that doing so was in the best interests of the children. Affirmed.

/s/ Michael J. Riordan
/s/ David H. Sawyer
/s/ Kathleen Jansen