*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILSON, Minors.

UNPUBLISHED
March 14, 2024

No. 366122
Sanilac Circuit Court
Family Division
LC No. 21-036441-NA

Before: PATEL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent-father, Kyle Wilson, appeals as of right the trial court's order terminating his parental rights to SW, KW, CW, and JW under MCL 712A.19b(3)(j) (reasonable likelihood that the child will be harmed if returned to parent's home); (m)(*i*) (parent convicted of criminal sexual conduct and continuing the parent-child relationship with the parent would be harmful to the child); and (m)(*ii*) (parent convicted of violating a criminal statute that includes as an element the use of force or the threat of force and that subjects the parent to sentencing under MCL 769.10, MCL 769.11, or MCL 769.12, and continuing the parent-child relationship with the parent would be harmful to the child) at initial disposition. We affirm.

## I. FACTS

Respondent was never married to the children's mother. He is the children's legal father. Respondent and the children's mother lived together with the children until he was incarcerated in January 2021. The children thereafter resided with their mother. There was no custody or parenting-time order.

On March 23, 2021, petitioner, the Department of Health and Human Services (DHHS), filed a petition seeking jurisdiction, removal of the minor children from respondent's care, and termination of respondent's parental rights at initial disposition.[1] In the petition, DHHS alleged that respondent had a substantiated Children's Protective Services (CPS) history that included

---

[1] The children's mother was not a respondent in the petition. She was never investigated for abuse or neglect.

sexual abuse, improper supervision, and threatened harm. The petition also alleged that respondent "has demonstrated a pattern of sexual abuse against children and has failed to rectify these barriers resulting in immediate safety risks and threatened harm of sexual abuse toward his own children." The petition additionally alleged that respondent "has demonstrated a pattern of untreated substance abuse and mental health issues and has failed to rectify those barriers resulting in impacting his ability to parent his children."

DHHS sought jurisdiction under MCL 712A.2(b)(1) (the parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals; the juvenile is subject to a substantial risk of harm to his or her mental well-being; the juvenile is abandoned by his or her parents, guardian, or other custodian; or the juvenile is without proper custody or guardianship), and MCL 712A.2(b)(2) (the home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the children to live). DHHS sought termination of respondent's parental rights at initial disposition under MCL 712A.19b(3)(j). DHHS requested "termination of parenting time" under MCL 712A.13a(13) "pursuant to MCL 712A.19b(3)(m)(*ii*) wherein a violation of a criminal statute that includes as an element the use of force or the threat of force and that subjects the parent to sentencing [under the statutes authorizing enhanced sentencing for an habitual felony offender] and MCR 3.965(C)(7) for the reason that it is unsafe for any of these minor children to be exposed to [respondent] for any further period of time due to the severity of the allegations herein, and because parenting time, even if supervised, may be harmful to the juvenile's life, physical health, and/or mental well-being."

The adjudication trial was held on January 26, 2023. The CPS worker testified that she received the complaint in this case in March 2021. She was familiar with this family from a previous investigation. Respondent's counsel objected when counsel for DHHS asked the CPS worker about the date of the previous investigation. The trial court eventually overruled the objection, stating: "I'm allowing the testimony. I due [sic] believe it's relevant. It addresses allegations that are currently in the petition." Further, the trial court also allowed, over objection from respondent's counsel, the CPS worker to testify about the DHHS investigation records. The jury unanimously found that each of the statutory grounds alleged in the petition were proven, and the trial court entered an order of adjudication.

Termination was requested at the initial disposition hearing on March 22, 2023. After the hearing, the trial court took the matter under advisement and subsequently entered a written opinion on April 14, 2023. The trial court summarized the testimony presented during the hearing and found that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(j), (m)(*i*), and m(*ii*). The trial court also found "by a preponderance of legally admissible evidence that termination is in the best interests of the minor children."

Respondent now appeals.

## II. EVIDENTIARY RULINGS

Respondent first raises multiple claims of evidentiary error at his adjudication trial. Specifically, in challenging the trial court's exercise of jurisdiction over the children, respondent argues that the trial court admitted inadmissible hearsay evidence that the jury relied on when it found by a preponderance of the evidence that statutory grounds existed to exercise jurisdiction. We disagree.

The Michigan Rules of Evidence for civil proceedings apply at an adjudication trial. MCR 3.972(C)(1). "We review for an abuse of discretion a trial court's decision regarding the admission of evidence." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *Id*. (quotation marks and citation omitted). "When an evidentiary question involves a question of law, such as the interpretation of a statute or court rule, our review is de novo." *Id*. Unpreserved arguments in termination of parental rights cases are reviewed for plain error affecting substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019); *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *VanDalen*, 293 Mich App at 135 (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Utrera*, 281 Mich App at 9. The party asserting plain error bears the burden of persuasion with respect to prejudice. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020).

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase. Generally, during the first phase, a court determines whether it can take jurisdiction over the child." *In re Collier*, 314 Mich App 558, 567; 887 NW2d 431 (2016) (quotation marks and citation omitted). "Unlike at the dispositional phase of protective proceedings, the rules of evidence apply to adjudication hearings." *Id*. at 573. "Jurisdiction must be established by a preponderance of the evidence." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). A respondent may admit to the allegations contained in the petition, plead no contest to the allegations, or demand a trial (i.e., an adjudication) to contest the merits of the petition. *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014). "If a trial is held, the respondent is entitled to a jury, the rules of evidence generally apply, and the petitioner has the burden of proving by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition." *Id*. (citations omitted).

Respondent first argues that the trial court abused its discretion when it allowed the CPS worker to testify under MRE 803(6) and (8) about her investigation of respondent's CPS history using the electronic Michigan Statewide Automated Child Welfare Information System (MiSACWIS). He states that DHHS "might have an argument if they actually introduced the records into evidence." He contends, however, that the MiSACWIS records would not have been admissible had DHHS tried to introduce them because "evaluations and investigations are specifically excluded from both the business rule and public records exception." He then contends that the CPS worker could not "testify to the jury what the business record purportedly said if said business record is never produced either to the Respondent or admitted at trial."

The trial court found that the testimony and records were admissible under MRE 803(6) and MRE 803(8) and overruled respondent's objection. The trial court noted that "at this point [in

the adjudication phase], the reports haven't been offered, only testimony is being given regarding the investigation and it is specifically referred to in the petition." Respondent argues that "[t]his evidentiary ruling was an abuse of discretion. You can't testify with respect to what a business record says or purports to say if you do not actually admit the business record."

Respondent asserts that if the "purported business records" had been offered by DHHS, "they still would not qualify under the business record exception because all of these reports are prepared in anticipation of court involvement. The reports in question are prepared so that the judge can review the progress the parents are making in their cases." Respondent refers to the "purported business records" as "the CPS reports contained in parent's case files."[2]

In his argument, respondent cites the language of the business-records exception to the hearsay rule in support of his argument. Under MRE 803(6), the following is not excluded by the hearsay rule, even though the declarant is available as a witness:

> **Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Respondent does not appear to dispute that the MiSACWIS is a business record. He cites caselaw noting that trustworthiness of business records is presumed when the party offering the evidence establishes the requisite foundation and that the presumption is rebutted where the source of the information or the method or circumstances of preparation indicate lack of trustworthiness. See *Solomon v Shuell*, 435 Mich 104, 125-126; 457 NW2d 669 (1990). He also cites caselaw in support of his contention that a business record's trustworthiness is undermined when it is "prepared in anticipation of litigation" or "when the regularly conducted business is the production of evidence for use at trial or in the court and not in the business." Respondent then concludes, without analysis or explanation, that "all of these reports are prepared in anticipation of court involvement" because they "are prepared so the judge can review the progress the parents are making in their cases." Consequently, this argument could be considered abandoned. *Houghton*

---

[2] It appears that respondent is referring to the MiSACWIS as the "purported business record." It does not appear that respondent is referring to the ISP prepared by the CPS worker after her review of MiSACWIS, given that the lower-court record reveals that respondent's counsel was provided with a copy of that report more than two years before the adjudication trial.

*v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003); *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

Respondent points to no evidence to indicate that the information memorialized in MiSACWIS was prepared in anticipation of litigation. The CPS worker testified that "everything a worker does gets recorded" in MiSACWIS and that the system is available for use by caseworkers "throughout the state at any time." She testified that her review of respondent's CPS history in MiSACWIS revealed that respondent was "identified as a perpetrator of sexual abuse" in 2014 and 2021, and identified for "improper supervision" as well.

Thus, the record establishes that counsel for DHHS laid a foundation for the CPS worker's testimony under the business-records exception to the hearsay rule, MRE 803(6), and the trial court did not abuse its discretion by admitting it under that rule of evidence.

Second, respondent argues that the trial court abused its discretion by admitting the amended felony information containing the charges that formed the basis of his 2021 convictions for attempted third-degree criminal sexual conduct (CSC) involving his minor brother. Respondent argues that the rules of evidence "are very specific on what is admissible with respect to a prior conviction." He argues that a felony information is not an order under MCL 600.2106 or a final judgment under MRE 803(22) and that it was not admissible under the statute or the court rule. He also argues that the statutory allegations about each count charged in the amended felony information were hearsay. He additionally argues that the habitual offender notice in the amended felony information indicating that he previously was convicted in 2015 of fourth-degree CSC was hearsay. Respondent argues that because he pleaded no contest, DHHS was required to prove with legally admissible evidence that he committed the offense. Respondent did not object on these grounds in the trial court. Rather, he objected to admission of the amended felony information on the ground that the document was cumulative evidence because the conviction was admitted, and because the information in the amended felony information was not relevant. He also argued that the amended information merely was a charging document that contained allegations but did not contain the "facts" that formed the basis of respondent's plea. These arguments are therefore not preserved. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004).

With respect to the prior conviction, contrary to respondent's contention, his no-contest plea to the charge of fourth-degree CSC was not admitted. The CPS worker testified, without objection, that she discovered through a search of the public sex offender registry that respondent was convicted of a sexual offense against a child. She testified, without objection, that she discovered through a "criminal history check" that respondent was criminally convicted in 2015 of a sexual offense against a child. The certified judgment of sentence for respondent's 2021 convictions, which respondent conceded was properly admitted under MRE 803(22), stated that respondent was convicted by the court of being a habitual offender. Even if the amended felony information was improperly admitted because it revealed that respondent was a habitual offender, any error was harmless because it was cumulative of other unchallenged evidence of respondent's prior conviction of a CSC offense involving a minor. *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor, & Merrill, Inc*, 267 Mich App 625, 652; 705 NW2d 549 (2005) (holding that "[i]mproper admission of evidence is harmless if it is merely cumulative to other properly admitted evidence").

With respect to respondent's argument that the amended felony information contained "several inadmissible prejudicial hearsay statements with respect to the [2021] conviction," his argument appears misplaced. The certified judgment of sentence stated that respondent was convicted of Counts 1 and 2—both of which were attempted third-degree CSC involving a person between the ages of 13 and 15. The judgment of sentence included the charge code for the conviction, MCL 750.520d(1)(a). MCL 750.520d(1)(a) involves sexual penetration with another person who is at least 13 years of age and under 16 years of age. Again, legally admissible evidence established that respondent pleaded guilty of attempted third-degree CSC with another person between the ages of 13 and 15 under MCL 750.520d(1)(a). While the amended felony information provided the acts of penetration that formed the basis of the convictions,[3] it was not offered to prove that respondent engaged in the specific acts alleged. Rather, it was offered to explain the charges to which responded pleaded guilty—that is, a conviction under MCL 750.520d(1)(a) involving penetration. Therefore, the charges are not hearsay. However, even assuming that the trial court abused its discretion by admitting the amended felony information with this information included, any error was harmless as the certified judgment of sentence established the prior CSC convictions involving a minor. DHHS did not have to establish that the offenses involved penetration.

Lastly, respondent argues, on the basis of his previous arguments regarding the admissibility of evidence, that the amount of hearsay evidence introduced was inconsistent with substantial justice. He contends that DHHS failed to present legally admissible evidence to establish that he had a pattern of CSC. As demonstrated by the above analysis, this argument is without merit. DHHS presented legally admissible evidence that respondent was substantiated for sexual abuse in 2014 and convicted in 2015 of CSC offenses involving a minor, that he was substantiated for sexual abuse in 2021 and convicted of CSC offenses involving his minor brother, that he is a registered sex offender, that he was previously provided services, and that he admitted that he had substance-abuse and mental health issues. This evidence was sufficient to establish that the children came within the trial court's jurisdiction.

## III. GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by finding that the statutory grounds for termination were proven by clear and convincing evidence. We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709, 713; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710. In applying the clear-error standard, regard must be given to the trial court's special opportunity to judge the credibility of the witnesses before it. *In re Schadler*, 315 Mich App 406, 408-409;

---

[3] The amended felony information stated with respect to Count 1 that respondent attempted to "engage in sexual penetration to-wit fallatio, with a child who was at least 13 years of age, but under 16 years of age, contrary to MCL 750.520d(1)(a)." It stated with respect to Count 2 that respondent attempted to "engage in sexual penetration to-wit penis/anal with a child who was at least 13 years of age, but under 16 years of age."

890 NW2d 676 (2016). "We review de novo the interpretation and application of statutes and court rules." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *VanDalen*, 293 Mich App at 139. The trial court found there was clear and convincing evidence to establish statutory grounds for termination of respondent's rights to the children under MCL 712A.19b(3)(j), (m)(*i*), and m(*ii*), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.
>
> *  *  *
>
> (m) The parent is convicted of 1 or more of the following, and the court determines that termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child:
>
> (*i*) A violation of section 136, 136a, 316, 317, 520b, 520c, 520d, 520e, or 520g of the Michigan penal code, 1931 PA 328, MCL 750.136, 750.136a, 750.316, 750.317, 750.520b, 750.520c, 750.520d, 750.520e, and 750.520g.
>
> (*ii*) A violation of a criminal statute that includes as an element the use of force or the threat of force and that subjects the parent to sentencing under section 10, 11, or 12 of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.10, 769.11, and 769.12.

The trial court found that under MCL 712A.19b(3)(j) there was a reasonable likelihood, based on respondent's conduct, that the children would be harmed if returned to respondent's home. The trial court found, and the evidence established, that respondent sexually assaulted a 10-year-old girl and, as a result of that conviction, he was placed on the sex offender registry as a Tier III offender under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. Respondent then sexually assaulted his 14-year-old brother over two nights while his brother was staying at respondent's home. At the time of the hearing, respondent's oldest children were 13 and nine years old, respectively. The oldest child was developmentally disabled and vulnerable. The trial court determined that there were grounds to terminate respondent's parental rights because respondent's sexual abuse of two other children presented a risk of harm to the minor children. "How a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFrance*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (cleaned up). This, the doctrine of anticipatory neglect, is not limited only to a respondent's treatment of children who are his offspring. See, e.g., *In re Powers*, 208 Mich App 582, 588-592; 528 NW2d 799 (1995), superseded in part by statute on other grounds as stated in *In re Jenks*, 281 Mich App 514, 517 n 2; 760 NW2d 297 (2008).

Respondent seems to suggest that his children were not at risk of sexual abuse because they are his biological children. By implication, he suggests that only other children are at risk in respondent's care. That respondent could sexually abuse any child evidences a shocking lack of judgment and, at the very least, poor parenting skills. Further, if respondent could cross the line with respect to his biological brother, there is no guarantee that he would not cross this same line with his children. The evidence supports the trial court's finding that there was a reasonable likelihood, based on respondent's conduct, that the children would be harmed if returned to respondent's home. Accordingly, the trial court did not clearly err by finding clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(j).[4]

## IV. BEST INTERESTS

Respondent argues that the trial court erred by finding that termination of his parental rights was in the children's best interests. We disagree.

This Court reviews a trial court's determination regarding a child's best interests for clear error. *White*, 303 Mich App at 713.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted). The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *White*, 303 Mich App at 713. The factors to consider include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. "A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019). In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

The trial court found that it was in the children's best interests to terminate respondent's parental rights. The trial court found that the children were residing with their mother in a safe and healthy environment where they were not subject to any sexual, physical, or emotional abuse from respondent, or to the threat of sexual abuse. The trial court found that respondent admitted that he had a substance-abuse issue before going to prison. The trial court also found that the children's bond with respondent at the time of the hearing was minimal. Finally, the trial court found that the children needed stability and permanence and that termination of respondent's parental rights was the only way to protect the children from harm.

---

[4] Having so concluded, we need not address the additional statutory grounds for termination. See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

-8-

Respondent argues that the trial court erred when it found that it was in the children's best interests to terminate his parental rights because he claims that he had a bond with the children before the trial court suspended his parenting time. However, he fails to cite any evidence in support of his argument that he had a bond with the children. To the extent that respondent and his mother testified at trial about respondent's relationship with the children, the trial court found their testimony not credible.

Respondent relatedly argues that the trial court erred by finding that the children's bond with him was minimal. He argues that the delay in conducting the adjudication trial affected his bond with the children because his parenting time was suspended at the preliminary hearing. Importantly, while noting that MCR 3.972(A) states in relevant part: "If the child is not in placement, the trial must be held within 6 months after the filing of the petition unless adjourned for good cause under MCR 3.923(G)," respondent does not allege that he is entitled to a new adjudication trial on the basis of error in the delay in conducting the adjudication trial. Rather, he seems to suggest that the trial court should not be able to use that period of time against him regarding a lack of bond. He notes that the trial was originally set for June 4, 2021, and that it was adjourned several times and ultimately held on January 26, 2023. He does not, however, specifically address the various reasons for the adjournments, which included, among other things, respondent's criminal proceedings, the failure of the Department of Correction to bring respondent to the courthouse for the trial, and DHHS's counsel's need for a necessary medical procedure.

Nonetheless, the child's bond with the parent is but one factor the trial court may consider when determining the best interests of the child. See *White*, 303 Mich App at 713-714. Ultimately, it is in the best interests of children to be raised by a caregiver who can keep them safe from physical and emotional harm and who uses proper parental judgment. A preponderance of the evidence supported that respondent would put the children at risk of sexual abuse and that he is not a suitable caregiver. A preponderance of the evidence also supported that respondent had unresolved substance-abuse issues. Accordingly, the trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests.

## V. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Sima G. Patel
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan