*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ADAMS, Minors.

UNPUBLISHED
June 22, 2023

No. 363896
Wayne Circuit Court
Family Division
LC No. 2022-001352-NA

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating her parental rights to her two minor children, JEA and JLA, under MCL 712A.19b(3)(b)(*i*) (parent's act caused injury or abuse), (j) (reasonable likelihood of harm to child if returned to parent), and (k)(*iii*) (parent's abuse of child included battering, torture, or other severe physical abuse). We affirm.

## I. BACKGROUND

This case arises from respondent's physical abuse of a half-sibling of her two children in late June 2022. Respondent is the biological mother of JEA and JLA. JEA and JLA have the same father. Their father has another child, KA, who is JEA's and JLA's half-sibling.[1] At the time of the June 2022 incident, respondent and the father of her children lived in separate houses and were in the process of a divorce. At the time, JEA was 11 years old, JLA was almost 7 years old, and their half-sibling KA, was 15 years old.

In late June 2022, respondent went to the father's house to pick up JEA and JLA. At the time, KA, JEA, and JLA were asleep in their father's upper-level bedroom. Respondent went into the bedroom, woke up KA, and demanded that KA provide the passcode to her cell phone. KA, unaware of why respondent wanted to access the cell phone, refused to provide the passcode. In turn, respondent straddled KA and began choking her. Respondent also placed her knee on KA's neck, making it difficult for KA to breathe, and punched KA in the face, causing her to hit her head on a nearby windowsill. At some point during the abuse, JEA woke up and left the room to

---

[1] The father is not a respondent in this case.

-1-

get her father. In the meantime, KA's cousin, DG, came upstairs and yelled at respondent. But she continued to choke KA.

When the father arrived to the bedroom, he pushed respondent off of KA. Respondent then pulled out a firearm.[2] JEA and JLA were both awake and in the bedroom when respondent brandished the firearm. The father and DG instructed the children to go downstairs. Sometime later, DG came down the stairs holding the firearm, followed by the father and respondent. Respondent called the police, who arrived shortly after, arrested respondent, and took KA to the hospital where doctors treated her for a neck abrasion and retinal blood clots.

At some point, law enforcement issued a safety plan for JEA and JLA to remain in the father's home. Sometime in July 2022, after respondent's release from jail, she took JEA and JLA from their father's home. For approximately two months after, respondent refused to return the children to their father. According to Kenyana Carson, a worker with Children's Protective Services (CPS), respondent returned JEA and JLA after the preliminary hearing in this case in mid-September 2022.

In September 2022, petitioner, the Michigan Department of Health and Human Services (MDHHS), filed a permanent custody petition seeking to terminate respondent's parental rights to JEA and JLA. MDHHS's petition alleged that respondent provided inadequate care and support for JEA and JLA, and that her home was unfit for her children. Referencing respondent's abuse of KA, the petition alleged that it was dangerous for JEA and JLA to remain with respondent.

In November 2022, the trial court held a hearing on the petition. KA, her father, and respondent testified, as did several workers from MDHHS and CPS. During her testimony, KA recounted the events of late June 2022 and described an incident that occurred at a bowling alley before the June 2022 incident. KA indicated that respondent pushed a bowling ball that KA was holding into KA's chest, knocked over a bowling-ball rack, and "chas[ed] [KA] around the bowling alley."

After the testimony and closing arguments, the trial court exercised jurisdiction over JEA and JLA, and found that grounds existed to terminate respondent's parental rights to JEA and JLA under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*iii*). The court also addressed the best interests of JEA and JLA. Its analysis of the statutory grounds and best interests focused on respondent's physical abuse against KA and its concern that she could extend that abuse to JEA and JLA in the future. The court later entered an order terminating respondent's parental rights to both children. This appeal followed.

## II. STANDARDS OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). We review for clear error the trial court's decision that statutory

---

[2] KA testified that she could not "remember exactly where [the firearm] came from . . . ."

grounds for termination have been proven by clear and convincing evidence, as well as its determination that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. "Best interests are determined on the basis of the preponderance of the evidence." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014).

## III. STATUTORY GROUNDS

Respondent first argues that the trial court clearly erred when it terminated her parental rights under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*iii*). We disagree.

### A. MCL 712A.19b(3)(b)(*i*) AND (k)(*iii*)[3]

A court may terminate parental rights under MCL 712A.19b(3)(b)(*i*) if it finds by clear and convincing evidence that "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse[,] . . . [t]he parent's act caused the physical injury or physical or sexual abuse[,] and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." A court may terminate parental rights under MCL 712A.19b(3)(k)(*iii*) if it finds by clear and convincing evidence that the "parent abused the child or a sibling of the child [and] the abuse included . . . [b]attering, torture, or other severe physical abuse." Under the doctrine of anticipatory abuse, how a parent treats one child is probative of how that parent may treat another child. *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014); *In re Powers*, 208 Mich App 582, 592-593; 528 NW2d 799 (1999), superseded in part on other grounds by statute in MCL 712A.19b(3)(b)(*i*).

The trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(b)(*i*) and (k)(*iii*). MDHHS presented evidence that respondent's June 2022 abuse of KA caused a neck abrasion and retinal blood clots that required hospitalization. Respondent denied causing KA's injuries. But KA testified that, after refusing to provide the passcode to her cell phone, respondent pinned KA down to the bed, choked her, and punched her. Respondent also put her knee on KA's neck, preventing KA from breathing. Respondent did not stop until JEA, JLA, and KA's father pulled her off KA. Critically, respondent assaulted KA and pulled out a firearm while JEA and JLA were in the same room. And according to KA, respondent had previously assaulted her at a bowling alley. The trial court recognized that although respondent had not abused JEA or JLA, it could "impute" her treatment of KA "to the other children . . . ." How respondent treated KA is probative of how she may treat JEA and JLA in the future. See *In re LaFrance*, 306 Mich App at 730. There is a reasonable likelihood that, in the future, JEA or

---

[3] Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). But because the facts of this case apply equally to MCL 712A.19b(3)(b)(*i*) and (k)(*iii*), we address these statutory grounds simultaneously.

JLA would disobey a similar parental command from respondent and respondent would react the same way. The fact that respondent pulled out a firearm during the assault while JEA and JLA were nearby also tends to suggest the likelihood of future harm. The trial court properly recognized this likelihood. We therefore conclude that the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(b)(*i*) and (k)(*iii*).

## B. MCL 712A.19b(3)(j)

Though we need not address additional statutory grounds where a single ground has been established, see *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011); *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009), we do so here for thoroughness.

The trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(j). A court may terminate parental rights under MCL 712A.19b(3)(j) if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

MDHHS presented evidence supporting the trial court's finding that there was a reasonable likelihood that, based on respondent's conduct, JEA and JLA would be harmed if placed in respondent's care. Although respondent did not abuse JEA or JLA, she physically abused KA at least twice. KA testified about respondent's actions during the June 2022 incident: respondent choked and punched KA after KA refused to tell respondent the passcode to her cell phone, put her knee on KA's neck, preventing her from breathing, and pulled out a firearm, all while JEA and JLA were in the room. KA also testified that, before the June 2022 incident, respondent pushed a bowling ball into KA's chest and chased her around a bowling alley. Respondent herself testified that she used "scare tactics" to parent her children. And she failed to comply with a safety plan implemented by law enforcement, taking JEA and JLA from their father's care, and refusing to return the children for approximately two months. Respondent's treatment of KA, and her failure to comply with the safety plan, demonstrate a reasonable likelihood that JEA and JLA would be harmed if returned to respondent's care. It is reasonable to conclude, as the trial court did here, that respondent may react similarly in the future should JEA or JLA respond to a parental demand the same way as KA. We therefore conclude that the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(j).

## IV. BEST INTERESTS

Respondent also argues that the trial court clearly erred when it found that it was in JEA and JLA's best interests to terminate respondent's parental rights. She contends that the trial court's failure to account for her bond with JEA and JLA warrants reversal. We disagree.

In termination proceedings, the trial court must weigh all the evidence, within the entire record, to determine the children's best interests. See *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "The focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks, citation, and brackets omitted). The trial court must consider each child individually and assess the best interests of each

-4-

child separately, unless the children are similarly situated. *In re TK*, 306 Mich App at 711 (citation omitted).

"To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714. The trial court must state on the record or in writing its findings of fact and conclusions of law regarding its best-interest determination. See MCL 712A.19b(1); MCR 3.977(I)(1).

The trial court did not clearly err in finding that it was in the best interests of JEA and JLA to terminate respondent's parental rights. Respondent straddled, choked, and punched KA for her refusal to provide the passcode to her cell phone. JEA and JLA were present in the room when this abuse occurred. Respondent also pulled out a gun in front of the three children. She also had a history of not complying with the safety plan and no-contact order. After abusing KA and court intervention, respondent took JEA and JLA from their father and refused to return them for two months. She also drove past his house and yelled profanities at KA in violation of a no-contact order. And she admitted she used "scare tactics" to get her children to obey her. The children's father expressed concern for their safety because of respondent's use of "manipulation" when parenting. The trial court acknowledged that the father's rights were intact, so there was no concern about adoption. And although the court did not address the bond between respondent and her two children, this Court has affirmed a lower court's finding that termination was in a child's best interests in light of the possibility of future harm to child without reference to the bond between the child and parent. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011).

One of the trial court's main concerns was the likelihood that JEA and JLA would replicate KA's behavior (failing to comply with a parental command) in the future and respondent would react as she did in June 2022. It noted its obligation to "consider each of these children individually," and acknowledged they were "not necessarily similar sex," but were "different ages." See *In re TK*, 306 Mich App at 711. It found, however, that JEA and JLA were "still in a position where they both can be exposed to the wrath of the mother if they do not come into quick compliance, and stay in a child's lane when it comes to her." These findings were not clearly erroneous. JEA was, as the trial court described her, a "preteen" and just four years younger than KA. JLA, though six years old, was still of an age where he may disobey a parental directive. Considering respondent's actions toward KA, there is a risk of harm to both children should they be returned to respondent's care. We therefore conclude that the trial court did not clearly err in finding that termination of respondent's parental rights was in the best interests of JEA and JLA.

We affirm.

/s/ Noah P. Hood
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates