*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILKERSON, Minors.

UNPUBLISHED
December 20, 2024
9:27 AM

Nos. 368808; 368811
Wayne Circuit Court
Family Division
LC Nos. 2023-001020-NA;
2023-001018-NA

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In these consolidated[1] appeals, respondent appeals by right the trial court orders terminating his parental rights to his minor children, AW and JW, under MCL 712A.19b(3)(j)[2] (reasonable likelihood, based on the parent's conduct or capacity, that the child will be harmed if returned to the parent). On appeal, respondent argues that the trial court clearly erred by finding statutory bases to exercise jurisdiction over the children and terminate respondent's parental rights based on the anticipatory-abuse doctrine,[3] the trial court clearly erred by finding that termination

---

[1] *In re Wilkerson, Minors*, unpublished order of the Court of Appeals, entered December 5, 2023 (Docket Nos. 368808 and 368811).

[2] MCL 712A.19b(3)(j) was amended through the adoption of 2023 PA 295, effective February 13, 2024. References to MCL 712A.19b(3)(j) in this opinion refer to the version in effect at the time of the trial court's orders terminating respondent's parental rights.

[3] Although this doctrine is more commonly referred to as the anticipatory-neglect doctrine, it applies equally to abuse. See *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (explaining that a parent's abuse or neglect of one child is probative of how that parent may treat other children).

served the children's best interests, and the trial court erroneously failed to consider guardianship as an alternative to termination. We disagree and therefore affirm.

## I. BACKGROUND

These appeals arise from two trial court orders terminating respondent's parental rights to his daughter, AW, and his son, JW.[4] In June 2023, the Department of Health and Human Services (DHHS) petitioned the trial court to terminate respondent's parental rights based on allegations that he sexually abused his then-15-year-old niece, LL. After a preliminary hearing, the trial court authorized the petitions, removed the children from respondent's care, and suspended respondent's parenting time. DHHS then placed AW with her paternal aunt, Felicia Wilkerson (Felicia), and JW with his mother.

In August 2023, a referee presided over a combined adjudication and termination hearing. During the hearing, LL testified about respondent's alleged sexual abuse. Lincoln Park Police Detective Sergeant Ryan Hammerle testified about his investigation of the alleged sexual abuse. Child Protective Services (CPS) caseworker Heather Huff testified about AW and JW's wellbeing. And other witnesses testified about their interactions with respondent and the children.

For her part, LL testified that respondent sexually abused her on numerous occasions between August 2022 and February 2023. She recounted the abuse in detail, stating that it included digital-vaginal penetration, penile-vaginal penetration, and physical abuse, including one instance in which respondent choked her and another instance in which respondent slapped her in the face. In March 2023, LL reported the abuse to the police and, in doing so, presented audio recordings of respondent discussing sexually explicit topics with her.[5]

Detective Sergeant Hammerle testified that he investigated respondent's alleged sexual abuse. He spoke to LL's parents, observed LL's forensic interview, listened to LL's audio recordings, and referred the matter to the Wayne County Prosecutor's Office. As of the date of his testimony, the Wayne County Prosecutor's Office had not initiated criminal charges against respondent in relation to the alleged sexual abuse.

Huff testified about her investigation of the children's wellbeing. She stated that CPS received notice of the matter in March 2023. That month, Huff spoke to respondent, who denied the sexual abuse allegations and reported a rift between himself and LL's mother. Huff interviewed AW and JW, neither of whom reported any sexual abuse. Huff developed a safety plan, under which AW was placed with Felicia and JW was placed with his mother. Huff opined that the children's respective placements were suitable and noted that Felicia wished to adopt AW.

---

[4] AW and JW are paternal half siblings. AW's biological mother is deceased, and JW's biological mother is alive. Neither one was a party to the termination proceedings. When respondent's parental rights were terminated, AW was three years old and JW was 10 years old.

[5] The audio recordings were not admitted as evidence and are not part of the lower court file. The presiding referee stated that she did not rely on the recordings in making her findings and recommendations to the trial court.

Huff recommended that the trial court terminate respondent's parental rights in light of the risk of future sexual abuse.

Felicia testified that respondent began residing in her home in either July or August 2022. Around that same time, LL regularly visited her home and babysat her children. Felicia never witnessed respondent behave inappropriately around LL, and LL never disclosed any alleged sexual abuse to her. Felicia opined that respondent was a good father and shared a bond with both AW and JW. Respondent provided food, clothing, and shelter for his children, and Felicia never witnessed respondent behave inappropriately around them.

Felicia's live-in boyfriend, Eric Wykoff, and a friend of the family, Judy Wykoff,[6] both testified about their interactions with respondent and the children. They observed respondent interact with LL, AW, and JW on multiple occasions. They never saw respondent behave inappropriately around the children and did not have any concerns about his behavior. They each opined that respondent met his children's needs and shared a bond with them. They also witnessed AW repeatedly ask for respondent after being removed from his care.

Following the presentation of evidence, the referee recommended findings that DHHS established statutory bases to exercise jurisdiction over the children under MCL 712A.2(b)(2), DHHS established statutory bases to terminate respondent's parental rights under MCL 712A.19b(3)(j), and DHHS established that termination served the children's best interests under MCL 712A.19b(5). In October and November 2023, the trial court adopted the referee's recommendations and entered orders terminating respondent's parental rights. The orders provided that the trial court regarded LL's allegations of sexual abuse as credible, and the children would be at risk of sexual abuse in respondent's care. They further provided that, based on the anticipatory-abuse doctrine, there were statutory bases to exercise jurisdiction over the children, there were statutory bases to terminate respondent's parental rights, and termination served the children's best interests.

This appeal followed. Contrary to the assertions in petitioner's brief, respondent properly filed a claim of appeal related to both AW and JW. This Court consolidated the two cases through an administrative order. *In re Wilkerson Minors*, unpublished order of the Court of Appeals, entered December 5, 2023 (Docket Nos. 368808; 368811).

## II. STANDARDS OF REVIEW

We review for clear error the trial court's conclusion that statutory grounds for jurisdiction have been proven by a preponderance of the evidence. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). We likewise review for clear error the trial court's conclusion that statutory grounds for termination have been proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). And we review for clear error the trial court's conclusion that, based on a preponderance of the evidence, termination served the children's best interests. *Id*. "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

---

[6] Eric and Judy Wykoff are cousins.

-3-

conviction that a mistake has been made." *Id*. at 41 (quotation marks, brackets, and citation omitted). We defer to "the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

### III. STATUTORY GROUNDS FOR JURISDICTION AND TERMINATION

On appeal, respondent argues that the trial court clearly erred by finding statutory bases to exercise jurisdiction over the children and terminate respondent's parental rights based on the anticipatory-abuse doctrine. We disagree.

Under MCL 712A.2(b)(2), a trial court may exercise jurisdiction over children whose "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in." To terminate parental rights, the trial court must find that at least one basis for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). Termination is warranted under MCL 712A.19b(3)(j) if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent."

In concluding that there were statutory bases to exercise jurisdiction over the children and terminate respondent's parental rights, the trial court found that respondent repeatedly sexually abused LL. It applied the anticipatory-abuse doctrine and concluded that respondent's sexual abuse was probative of how he would treat his children. Broadly, the anticipatory-abuse doctrine "allows an inference that a parent's treatment of one child is probative of how that parent may treat other children." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). "However, the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *Id*.

Respondent contends that the anticipatory-abuse doctrine only applies when a parent abuses a child over whom they have some degree of parental authority such that it is inapplicable to this case. We disagree. Contrary to respondent's contention, the anticipatory-abuse doctrine is not limited to instances in which a parent abuses a child over whom they have some degree of parental authority. See *In re Powers*, 208 Mich App 582, 591; 528 NW2d 799 (1995), superseded in part on other grounds by MCL 712A.19b(3)(b)(*i*) ("Common sense dictates that the principle of anticipatory abuse . . . should also apply in this case despite the fact that [the respondent] was not the father, guardian, or legal custodian of the previously abused child . . . ."). See also *In re Wilson*, unpublished per curiam opinion of the Court of Appeals, issued March 14, 2014 (Docket No. 366122) ("the doctrine of anticipatory neglect[] is not limited only to a respondent's treatment of children who are his offspring.").[7]

---

[7] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

Respondent further contends that, to the extent the anticipatory-abuse doctrine applies, the probative value of respondent's sexual abuse was diminished by differences between LL and his children such that the trial court clearly erred by finding statutory bases to exercise jurisdiction over the children and terminate his parental rights. We again disagree. The record reflects that LL differed from respondent's children because she did not live in respondent's home and was not respondent's child. Yet, LL spent considerable time in respondent's home and occasionally spent the night. She testified that respondent behaved inappropriately or sexually abused her nearly every time they were alone together. In light of the evidence that respondent repeatedly sexually abused his biological niece in the home where he lived with his children, the probative value of respondent's sexual abuse was not negated by the fact that LL lived elsewhere or the fact that LL was not respondent's child.

Similarly, the fact that LL is female and JW is male did not negate the probative value of respondent's prior sexual abuse as it related to JW. See *In re Mota Minors*, 334 Mich App 300, 323; 964 NW2d 881 (2020) (rejecting the respondent's argument that he did not pose a risk to his male child based on his sexual abuse of a female minor and explaining that "abuse is abuse."). We acknowledge that the probative value of an inference under the anticipatory-abuse doctrine "decrease[s] by differences between the children." *In re Kellogg*, 331 Mich App at 259. Here, however, the differenced between LL and JW are not so pronounced as to negate the probative value.

Furthermore, in finding statutory bases to exercise jurisdiction over the children and terminate respondent's parental rights, the trial court did not rely solely on the anticipatory-abuse doctrine. The trial court also found that respondent's sexual abuse of LL posed a risk of significant emotional harm to the children if respondent sexually abused one of their friends in the future. Stated differently, the trial court was not merely concerned with the risk that respondent might sexually abuse his own children; it was also concerned about the risk of significant emotional harm to the children if respondent were to sexually abuse another minor in the home he shared with his children.

In sum, the trial court did not clearly err by finding statutory bases to exercise jurisdiction over the children under MCL 712A.2(b)(2) and terminate respondent's parental rights under MCL 712A.19b(3)(j). Respondent's sexual abuse established by a preponderance of the evidence that his home was unfit based on his depravity. It also established by clear and convincing evidence a reasonable likelihood that AW and JW would be harmed if returned to respondent's care.

## IV. BEST INTERESTS

Respondent also argues that the trial court clearly erred by finding that termination served the children's best interests. We disagree.

"If the court determines that one or more statutory grounds for termination exist and that termination is in the child's best interests, the court must enter an order terminating the respondent's parental rights and order that additional efforts for reunification not be made." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should

"focus on the child rather than the parent" when determining whether termination is in the best interests of a child. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). In making a best-interests determination, the trial court may consider factors such as:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

A child's relative placement weighs against termination, and the trial court must explicitly address whether termination is appropriate in light of a child's relative placement. *In re Olive/Metts Minors*, 297 Mich App at 43.

The trial court did not clearly err by finding that termination served the children's best interests. The record reflects that respondent's repeated sexual abuse of LL posed a significant risk of harm to the children. The trial court considered the extent to which respondent's access to certain resources could alleviate the risk he posed to the children. In doing so, the trial court concluded that there were no resources that could sufficiently benefit respondent given the heinous nature of his sexual abuse and failure to take responsibility for his actions. The trial court also appropriately considered the children's respective relative placements and nevertheless concluded that termination served their best interests.

Respondent argues that the trial court erroneously failed to consider the testimony of numerous witnesses who questioned the veracity of LL's allegations or the fact that respondent was not arrested or charged with any crime in relation to the allegations. Respondent accurately points out that Felicia questioned LL's credibility, and there was no evidence that respondent was arrested or charged with any crime in relation to the allegations. However, in determining that termination was in the children's best interests, the trial court explained that it "heard no testimony that refuted, undermined or contradicted the testimony provided by [LL]." The record thus demonstrates that the trial court considered the evidence concerning LL's credibility and found LL's testimony credible. Although respondent may disagree, "[i]t is not for this Court to displace the trial court's credibility determination." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009).

Respondent further argues that the trial court erroneously failed to consider that he appropriately cared for his children in the past, that he had no criminal record, that he had no prior dealings with CPS, and that losing another parent would negatively impact AW. But respondent failed to present any authority demonstrating that the trial court was required to explicitly consider such factors. Nor do such factors establish that termination was contrary to the children's best interests. The trial court regarded LL's sexual abuse allegations as credible. Respondent's prior conduct, clean criminal record, and lack of prior CPS contact thus did not obviate the risk of harm he posed to the children. And the potential harm caused by termination did not outweigh the risk of future sexual abuse at the hands of respondent.

## V. LESS RESTRICTIVE ALTERNATIVES TO TERMINATION

Respondent argues that the trial court erred by failing to consider and rule out guardianship as a less restrictive alternative to termination before terminating his parental rights. We disagree.

Generally, an issue is preserved for appellate review if it was raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Respondent did not argue in the trial court that due process required the trial court to consider and rule out less restrictive alternatives, such as a guardianship, before terminating respondent's parental rights, nor did the trial court decide whether due process required such a consideration. As such, this issue is unpreserved.

This Court reviews unpreserved claims of error in termination proceedings for plain error affecting substantial rights. *In re Baham*, 331 Mich App 737, 744-745; 954 NW2d 529 (2020).[8] "In order to prevail, respondent must establish that (1) error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected [his] substantial rights." *Id*. at 745 (quotation marks and citation omitted). An error is clear or obvious when it is not subject to reasonable dispute. *Id*. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted). Under the plain-error rule, if the first three prongs are satisfied, reversal is only warranted if the error "seriously affected the fairness, integrity or public reputation of [the] judicial proceedings." *Id*. (quotation marks and citation omitted).

"The Fourteenth Amendment of the United States Constitution provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . .' " *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014), quoting US Const, Am XIV, § 1. The Fourteenth Amendment's guarantee of due process includes "a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id*. (quotation marks and citation omitted). Among the fundamental rights protected by due process is the right of parents to make decisions regarding the custody, care, and control of their children. *Id*. But this right is not absolute: the state has a "legitimate interest in protecting the moral, emotional, mental, and physical welfare" of children. *Id*. at 409-410 (quotation marks and citation omitted). To protect against the erroneous deprivation of a parent's fundamental right to make decisions concerning his or her child, the state must "meet a high burden before terminating an individual's parental rights." *In re B & J*, 279 Mich App 12, 18; 756 NW2d 234 (2008).

Due process requires that the petitioner prove a parent's lack of fitness by clear and convincing evidence before terminating parental rights. *Id*. at 23. "Michigan law fully comports with this requirement, requiring proof of at least one statutory ground [for termination] by clear

___

[8] In *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 5, this Court held that plain-error review does not apply to civil cases. In doing so, this Court stated that its holding "does not apply to termination of parental rights cases, which present different constitutional considerations." *Id*. at ___; slip op at 5 n 3.

-7-

and convincing evidence before the family court may terminate a respondent's parental rights." *Id*. (quotation marks and citation omitted). Once the petitioner establishes by clear and convincing evidence the existence of a statutory ground for termination under MCL 712A.19b(3), "the liberty interest of the parent no longer includes the right to custody and control of the children." *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83. Even if a trial court finds that statutory grounds for termination are established by clear and convincing evidence, "it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez Minors*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

"Under appropriate conditions, a trial court may forego termination and instead place children in a guardianship." *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 6. A guardianship enables the parent and the child to maintain a relationship while placement with the parent is not possible. *Id*. Typically, a trial court appoints a guardian in an effort to avoid terminating a respondent's parental rights. *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019). For a court to consider a guardianship before termination, one of two conditions must be met: "either DHHS must demonstrate under MCL 712A.19a(8) that initiating the termination of parental rights to the child is clearly not in the child's best interests or the court must not order the agency to initiate termination proceedings under MCL 712A.19a(8)." *In re Rippy*, 330 Mich App at 359, citing MCL 712A.19a(9) (quotation marks and brackets omitted). Even then, a court may order a guardianship only if it determines that doing so is in the child's best interests. *Id*. (quotation marks, citation, and brackets omitted). Stated differently, "the appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *In re TK*, 306 Mich App 698, 707; 859 NW2d 208 (2014).

Here, respondent has not established plain error affecting his substantial rights. His claim fails on the first prong of the analysis: he cannot establish an error. Neither of the conditions set forth in MCL 712A.19a(9) are met: DHHS alleged that termination served the children's best interests and sought termination by way of its initial petitions. Furthermore, the trial court found that termination served the children's best interests. Appointing a guardian for either child was therefore inappropriate. Because the trial court was not required to consider and rule out guardianship before terminating respondent's parental rights, and respondent has not demonstrated that guardianship would serve the children's best interests, respondent failed to establish plain error affecting his substantial rights.

We affirm.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica