*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KV, Minor.

FOR PUBLICATION
September 08, 2025
2:18 PM

No. 374236
Lenawee Circuit Court
Family Division
LC No. 24-000101-NA

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

ACKERMAN, P.J.

When a child is taken into state custody during child protective proceedings, the Department of Health and Human Services must ordinarily make reasonable efforts to reunify the child with his or her parents. In certain aggravated circumstances, however, the court may bypass reunification and consider termination of parental rights at the outset. We hold that the statutory scheme permits that option under MCL 722.638(1)(a) only when a parent has already abused the child or the child's sibling; anticipated abuse does not qualify. Because the trial court relied on anticipatory abuse to find aggravated circumstances, it erred in proceeding directly to termination. While we affirm the trial court's exercise of jurisdiction, we reverse its finding of aggravated circumstances, vacate the termination order, and remand for further proceedings.

## I. FACTS

Respondent is married and has a biological daughter, KV. Through his wife—who is also a respondent in these proceedings but not a party to this appeal—he has a stepdaughter and three stepsons. Although married, respondent apparently lives apart from his wife: she lives in Michigan while he lives in Indiana. Respondent is a truck driver, and the record reflects that the children

-1-

lived a transient lifestyle. KV spent time in both Michigan and Indiana and sometimes accompanied respondent on the road.[1]

These proceedings began when Indiana officials contacted Child Protective Services (CPS) with concerns that respondent had sexually abused KV and her stepsister, CG. In an interview, CG alleged that respondent had sexually abused her, up to and including digital penetration, and that she had witnessed respondent sexually abuse KV. CG further reported that her male brothers also touched the girls inappropriately and that her mother (respondent's wife) was aware but failed to intervene. Respondent had previously been the subject of more than 20 CPS investigations, and the Department of Health and Human Services (DHHS) alleged that other relatives had reported being sexually abused by him. Based on those allegations, in July 2024 DHHS petitioned the circuit court for jurisdiction, removal, and termination of parental rights. At the time, the children were in Lenawee County for a planned vacation with a relative. The trial court entered an order placing the children in custody.

The other parents involved in the case either pleaded no contest or voluntarily relinquished their rights.[2] Respondent, however, chose to proceed to a bench trial to determine jurisdiction over KV. CG testified that respondent had sexually abused her and that she had witnessed him sexually abuse KV. She also testified that her brothers behaved inappropriately toward her and KV, such as walking in on them while they were dressing in the bathroom and groping them, and that respondent and his wife ignored her complaints even while resorting to corporal punishment against her. By contrast, KV denied that respondent ever sexually abused her. She confirmed that her stepbrothers had abused her and that she felt unsafe around them, but she expressed a desire to remain in contact with respondent and ideally live with him and the rest of the family in a country setting.

At the close of trial, the court found CG's allegations against respondent credible but issued an unclear ruling. It concluded that CG and KV were not siblings and found that respondent

> is a person who is 18 years of age or older, who resided for any length of time in the child's home and with [CG] and had abused her including, again, attempted sexual penetration or assault with intent to penetrate. Therefore, the court would hereby take jurisdiction as to [KV], as to [respondent] as well, and the Department now may proceed to immediate disposition and I don't know if we are doing that today or the later date. They have the right to submit additional evidence if they choose. I debated about giving some insight here. I think I am going to go ahead and do it.
>
> Not knowing what the Department is going to present, I don't think in anyway this necessarily helps them, but obviously everyone knows that in order to terminate someone's parental rights without any attempt of reunification at the

---

[1] Indeed, the initial petition noted uncertainty about where the children resided, observing that several were "on the road" with respondent and his wife.

[2] Respondent's four stepchildren had multiple fathers, each of whom was also a respondent.

initial dispositional hearing the burden is much higher. It has to be by clear and convincing evidence. I'm not ready to rule on that because I haven't heard all the evidence, but you've heard my statements regarding the partial impeachment of [CG]'s testimony by [KV] and, 1) we will have to wait and see based upon all the other evidence that may or may not be presented whether or not relied upon evidence from the adjudication hearing can arise to clear and convincing evidence that [respondent]'s rights to [KV] should be terminated. Secondly, by [preponderance] of the evidence whether or not it is in [KV]'s best interest to have the rights terminated if that is what the court decides.

Although this established jurisdiction over KV, it did not clearly resolve whether aggravated circumstances existed to justify immediate termination. Indeed, the court arguably suggested that it was not deciding that issue, stating that DHHS could "submit additional evidence" and that the court was "not ready to rule on that because I haven't heard all the evidence."

DHHS promptly sought clarification. Its attorney noted that a finding of aggravated circumstances was necessary to proceed directly to termination. She argued that "aggravating circumstances do apply to [KV] by way of the doctrine of anticipatory abuse and neglect," citing *In re Mota*, 334 Mich App 300; 964 NW2d 881 (2020). The trial court replied:

I don't have a problem with [*Mota*] and I am willing to apply it here to my findings, but at least in my opinion I thought I referred to that by saying that since it is not her father that—I'm reading the very strict of that statute, that he qualifies because he is a person who is 18 years of age or older and who resided for any length of time in the child's home, which I said he did, and I did not find that they are siblings. I don't know if anyone takes issue with that, but in my opinion they are not siblings. They do not have the parent in common.

DHHS's counsel agreed that CG and KV were not siblings but renewed her request to apply the doctrine of anticipatory abuse or neglect. The court then said that it "would adopt that because I understand that when the Michigan Court of Appeals states that it is assist the lower courts in understanding what they are looking for as opposed to what I gave a very [strict] instruction to that particular statute." The court also clarified that it was exercising jurisdiction over KV based on respondent's "failure to protect against the molestation by the male children in the home."

Following the adjudication trial, the court entered an order on the standard State Court Administrative Office Form JC 49. It checked the box finding statutory grounds for jurisdiction but left blank the space identifying which ground was proven. It also left blank the section regarding aggravated circumstances. At the dispositional hearing, counsel representing DHHS summarized the case in her closing statement as "request[ing] termination of parental rights if the court finds that the parent has abused the child . . . and that the abuse includes sexual abuse, including penetration, and as this court found in the adjudication phase, based on the doctrine of anticipatory abuse and neglect, that is true." The court did not correct her, so that appears to be the shared understanding of those involved regarding the court's ruling on aggravated circumstances. After the hearing, the trial court terminated respondent's parental rights to KV. Respondent now appeals.

## II. STANDARD OF REVIEW

In an appeal from an order terminating parental rights, we review the trial court's findings for clear error. MCR 3.977(K). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tuttle v Dep't of State Hwys*, 397 Mich 44, 46; 243 NW2d 244 (1976) (cleaned up). On the other hand, questions of statutory interpretation are reviewed de novo. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006).

## III. ANALYSIS

## A. STATUTORY FRAMEWORK

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). The adjudicative phase determines whether the court "may exercise jurisdiction over the child." *Id*. To establish jurisdiction, DHHS must prove one of the bases set forth in MCL 712A.2(b).

"If the court acquires jurisdiction, the dispositional phase determines what action, if any, will be taken on behalf of the child." *Brock*, 442 Mich at 108. During this phase, "[r]easonable efforts to reunify the child and family must be made in all cases," MCL 712A.19a(2), except in the "rare circumstances provided by [MCL 712A.19a(2)(a)-(d)]" when a court may "hold a combined adjudicative and dispositional hearing in which parental rights may be terminated at the initial dispositional hearing." *In re Barber/Espinoza*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 3. One such "narrow exception," *id*., is MCL 712A.19a(2)(a), which applies when "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in" MCL 722.638(1) and (2). If one of the statutory grounds for termination under MCL 712A.19b(3) is also established, the court may terminate parental rights, provided termination is in the child's best interests, MCL 712A.19b(5).

These provisions together create a four-step process when DHHS seeks termination at the initial disposition. First, DHHS must establish jurisdiction under MCL 712A.2(b) by a preponderance of the evidence. MCR 3.972(C)(1). Second, it must prove "by clear and convincing evidence that aggravated circumstances exist in order to excuse the reasonable-efforts requirement" under MCL 712A.19a(2)(a). *Barber/Espinoza*, ___ Mich at ___; slip op at 4. Third, DHHS must demonstrate, again by clear and convincing evidence, one of the statutory grounds for termination under MCL 712A.19b(3). MCR 3.977(E)(3). Fourth, the court must determine by a preponderance of the evidence that termination is in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

A key restraint on termination at the initial disposition, then, is whether DHHS can prove aggravated circumstances under MCL 722.638(1) and (2). As drafted, that statute is "a procedural statute that controls when DHHS must take certain actions." *Barber/Espinoza*, ___ Mich at ___ n 5; slip op at 9. "Specifically, MCL 722.638(1) tells DHHS when it must file a jurisdictional petition, and MCL 722.638(2) tells DHHS when said mandatory petition triggers a requirement to request termination at the initial disposition." *Id*. At the same time, "MCL 712A.19a(2) . . . substantively incorporates MCL 722.638, setting the parameters for when the trial court may

-4-

excuse reasonable efforts aimed at reunification if the aggravated circumstances outlined in MCL 722.638(1) and (2) exist." *Id.* Under those provisions, aggravated circumstances exist when a parent "has abused the child or a sibling of the child and the abuse" involved one of several enumerated forms of especially serious abuse, and the parent is either "a suspected perpetrator or . . . suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take steps to intervene to eliminate that risk." MCL 722.638(1) and (2). "[I]f the court makes a determination that the circumstances in *both* MCL 722.638(1) and MCL 722.638(2) have been demonstrated, DHHS is not obligated to make reasonable efforts to reunify the family." *Barber/Espinoza*, ___ Mich at ___; slip op at 12.

## B. GROUNDS FOR JURISDICTION

The record leaves some uncertainty as to the trial court's precise reasoning. The order of adjudication left blank the spaces identifying both the statutory ground for jurisdiction and its finding of aggravated circumstances. Respondent first contends that, in light of this documentary record, the trial court failed to make adequate findings establishing jurisdiction over KV.

It is true that, ordinarily, "[a] court speaks through written judgments and orders rather than oral statements." *People v Jones*, 203 Mich App 74, 82; 512 NW2d 26 (1993). Still, "there are circumstances in which an oral ruling has the same force and effect as a written order, as when, for example, an oral ruling clearly communicates the finality of the court's pronouncement." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 388; 853 NW2d 421 (2014) (cleaned up). This Court, for example, has reviewed a termination hearing transcript to discern the trial court's reasoning. See *In re Baham*, 331 Mich App 737, 752-753; 954 NW2d 529 (2020).[3]

Here, the transcript clarifies that the court found by a preponderance that respondent assaulted CG and that, as a result, it was taking jurisdiction over KV. The court later added that jurisdiction rested on respondent's "failure to protect against the molestation by the male children in the home." Its findings turned on the court's assessment of CG's credibility, and "[i]t is not for this Court to displace the trial court's credibility determination." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009). Taken together, the findings establish jurisdiction under at least MCL 712A.2(b)(2), which authorizes jurisdiction when a parent's "neglect, . . . criminality, . . . or depravity" renders the home "an unfit place for the juvenile to live in." The court's oral ruling also adequately communicated finality, as there is no dispute that it held that it had jurisdiction over KV and proceeded to the disposition phase. The trial court's findings are not clearly erroneous, so we affirm its exercise of jurisdiction over KV.

---

[3] *Baham* relied in part on MCR 3.977(I)(1), which allows a court to "state on the record or in writing its findings of fact and conclusions of law" regarding termination. While MCR 3.972(E)—which governs verdicts after adjudication trials—does not expressly permit findings to be "on the record," the general principle from *Arbor Farms* applies equally to adjudication verdicts.

## C. AGGRAVATED CIRCUMSTANCES

Respondent also challenges the trial court's finding of aggravated circumstances under MCL 722.638(1) and (2). That determination excused DHHS from making reasonable efforts at reunification under MCL 712A.19a(2) and allowed the court to consider termination at the initial disposition. We begin by examining the basis of the trial court's decision and then assess whether it was consistent with the statute.

### 1. THE COURT'S FINDINGS

The basis of the trial court's aggravated-circumstances decision—and therefore the reasoning we are reviewing—is less clear than its adjudication ruling. On the record, the court stated that "to terminate someone's parental rights without any attempt of reunification at the initial dispositional hearing the burden is much higher," that "[i]t has to be by clear and convincing evidence," and that "I'm not ready to rule on that because I haven't heard all the evidence." To be clear, statutory grounds for termination must be proven by clear and convincing evidence in every case, whether at an initial disposition, MCR 3.977(E)(3), or otherwise, MCR 3.977(F)(1)(b). What distinguishes termination at the initial disposition is the additional requirement that DHHS prove, again by clear and convincing evidence, that aggravated circumstances exist under MCL 722.638(1) and (2) to excuse reasonable efforts at reunification. The court's comment that it was "not ready to rule on" aggravated circumstances because DHHS had not presented all its evidence suggests the court may have melded together the second and third steps of the process, as DHHS's ability to present additional evidence—at least, in pursuit of termination—depended on the court making a threshold finding of aggravated circumstances.

The record, however, ultimately provides some indication of the court's intent. Recognizing the uncertainty, DHHS asked for clarification and urged the court to apply the anticipatory neglect doctrine to support a finding of aggravated circumstances. The court agreed and said it "would adopt that." At the subsequent dispositional hearing, counsel for DHHS summarized the proceeding as one where "the parent has abused the child . . . and that the abuse includes sexual abuse, including penetration, . . . based on the doctrine of anticipatory abuse and neglect," and the trial court did not correct her. The most reasonable reading of the record, then, is that the trial court treated the aggravating circumstance as the anticipation of "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate" against KV. MCL 722.638(1)(a)(*ii*).

### 2. ANTICIPATORY NEGLECT

Having clarified the basis of the trial court's ruling, we turn to whether it was legally permissible. Under MCL 722.638(1)(a), a court may terminate parental rights at the initial disposition if "a parent . . . has abused the child or a sibling of the child and the abuse included . . . [c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." Neither party challenges the trial court's conclusion that CG and KV—who are

stepsiblings—do not qualify as "siblings" under this statute.[4]  DHHS nevertheless urged the court to apply the doctrine of anticipatory neglect (or anticipatory abuse), and the court relied on that doctrine in finding aggravated circumstances.  We conclude that the statute does not permit that approach.

"The doctrine of anticipatory neglect recognizes that '[h]ow a parent treats one child is certainly probative of how that parent may treat other children.' "  *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001), quoting *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973).  This Court has applied the doctrine in several contexts: to support a jurisdictional finding under MCL 712A.2(b), see *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004); to establish statutory grounds for termination under MCL 712A.19b(3), see *In re Powers*, 208 Mich App 582, 592-593; 528 NW2d 799 (1995); and to assess the best interests of the child under MCL 712A.19b(5), see *Mota*, 334 Mich App at 323.

In each of those settings, the doctrine aligns with the statutory text, which permits a forward-looking assessment of risk.  For example, although the bases for establishing jurisdiction under MCL 712A.2(b) "speak[] in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed," *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004), a present situation may nevertheless be intolerable because of reasonably anticipated future abuse.  A parent's anticipated "neglect, cruelty, drunkenness, criminality, or depravity" may render a home "an unfit place for [a] juvenile to live in."  MCL 712A.2(b)(2).  Similarly, several statutory grounds for termination under MCL 712A.19b(3) are "forward-looking."  *In re Mason*, 486 Mich 142, 161; 782 NW2d 747 (2010).  Those include whether there is a "reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time" or whether "[t]here is a reasonable likelihood . . . that the child will be harmed if the child is returned to the home of the parent."  MCL 712A.19b(3)(g), (j).  The best-interests inquiry under MCL 712A.19b(5) likewise has an inherently forward-looking component.  See, e.g., *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012) ("[T]he evidence showed that it was unlikely that the child could be returned to her parents' home within the foreseeable future, if at all.").

The language of MCL 722.638(1)(a), by contrast, is different.  It provides that aggravated circumstances exist when a parent "has abused" a child or child's sibling.  The verb tense is significant: the statute requires proof of actual past abuse.  By definition, anticipatory neglect (or abuse) assumes that "no actual detrimental act has occurred."  *In re Christie*, 339 Mich App 1, 6; 981 NW2d 172 (2021).  While this Court has said that MCL 722.638 "effectively codified the doctrine of anticipatory neglect," *AH*, 245 Mich App at 84, the codification is limited to the

---

[4] The trial court applied the juvenile code's definition of "sibling," which "means a child who is related through birth or adoption by at least 1 common parent."  MCL 712A.13a(1)(*l*).  Stepsiblings do not share a common parent by either birth or adoption.  As neither party challenges the trial court's application of this definition to MCL 722.638(1), we express no view on the issue.

circumstances described in the statute.[5]  Because § 638(1)(a) requires past abuse of the child or a sibling, it does not authorize a finding of aggravated circumstances based on past abuse of a non-sibling.[6]  Put differently, the statute recognizes only a narrow form of anticipatory abuse: it permits an inference that a parent who abuses a child's sibling may also abuse that child.  But when the children are not siblings, the statute does not permit extending that inference.

Moreover, as respondent points out, the statute requires that the prior act of abuse be directed at either the child for whom termination is sought or that child's sibling.  See *Barber/Espinoza*, ___ Mich at ___ n 10; slip op at 13 ("If the triggering conditions of MCL 722.638(1)(a) are met, 'the child' in MCL 722.638(2) refers to the abused child in MCL 722.638(1)(a) . . . .").  The trial court did not find that respondent abused KV, and neither party challenges its holding that CG is not KV's sibling.  The only abuse identified in the record—that of CG—therefore cannot satisfy MCL 722.638(1)(a) with respect to KV.  To hold otherwise would improperly extend the statute beyond its terms.[7]

## IV.  CONCLUSION

The trial court did not clearly err in exercising jurisdiction over KV.  Its aggravated-circumstances finding under MCL 722.638(1)(a), however, was erroneous as a matter of law.  Aggravated circumstances exist under that statute only if a parent *has abused* the child or the child's sibling; a finding of anticipatory abuse is insufficient.  Because the trial court did not find that respondent abused either KV or a sibling of KV, DHHS was required to make reasonable efforts to reunify respondent with KV before seeking termination.  We therefore affirm the trial

---

[5] MCL 722.638 does not represent a *complete* codification of anticipatory neglect, as the concept is applied to various analyses other than aggravated-circumstances findings.  See, e.g., *In re Allen*, unpublished per curiam opinion of the Court of Appeals, issued November 8, 2024 (Docket No. 371200), p 5 n 2 (rejecting the argument that MCL 722.638's codification of anticipatory neglect "preempted application of the doctrine under any circumstances not enumerated in the statute").  Indeed, even while the trial court could not support its aggravated-circumstance finding under MCL 722.638, anticipatory abuse further supports its *jurisdictional* finding under MCL 712A.2(b).

[6] We note that, in defining "abused" in MCL 722.638, the Supreme Court has looked to the definition of "child abuse" in MCL 722.622(g).  See *Barber/Espinoza*, ___ Mich at ___; slip op at 10.  While that definition includes some forward-looking language ("harm or threatened harm to a child's health"), the term it defines is *abuse*, not *abused*.  The use of the past participle *abused* in MCL 722.638(1) requires a *prior* act of "abuse," not *anticipated* future "abuse."  DHHS makes no argument that respondent *has abused* KV and relies solely on a theory of anticipatory abuse.

[7] Cf. *In re Ewing*, unpublished per curiam opinion of the Court of Appeals, issued May 9, 2013 (Docket Nos. 313313 and 313315), p 12 n 5 ("The record contains no evidence that any parent physically or sexually abused ME or EE.  Although the doctrine of anticipatory abuse or neglect may support a trial court's decision on termination, we have found no authority for the proposition that the doctrine of anticipatory abuse or neglect requires extension of the requirements placed on petitioner by MCL 722.638(1).").

court's exercise of jurisdiction, reverse its finding of aggravated circumstances, vacate the order terminating respondent's parental rights, and remand for further proceedings not inconsistent with this opinion.[8]

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

---

[8] In light of our disposition, we need not address respondent's remaining arguments.