*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. B. ISRAEL, Minor.

UNPUBLISHED
February 05, 2026
10:56 AM

No. 374902
Wayne Circuit Court
Family Division
LC No. 2024-001510-NA

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to his minor child, JBI, under MCL 712A.19b(3)(b)(*i*) (child or a sibling of the child has suffered physical injury or physical or sexual abuse caused by parent's act), MCL 712A.19b(3)(j) (reasonable likelihood that child would be harmed if returned to parent's care), and 712A.19b(3)(k)(*ii*) (parent's abuse of sibling included criminal sexual conduct involving penetration). On appeal, respondent contends that the trial court improperly relied on the doctrine of anticipatory neglect to find statutory grounds to terminate respondent's parental rights to JBI and challenges the trial court's best-interest determination. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of respondent's sexual assault of JBI's half-sister, TM. Respondent was JBI's legal father, but not the father of JBI's siblings, TM and CM. Until his mother's death, JBI lived with mother, respondent, TM, and CM in a three-bedroom home. TM had her own bedroom, while CM and JBI shared another bedroom. JBI's mother was disabled and in a wheelchair. From a young age, TM was her mother's caregiver.

Beginning when TM was about 10 years old, respondent sexually abused TM. On the first incident, respondent went into TM's room while she was sleeping and woke her up. Respondent told TM that he would take her phone away for a year unless she would let him suck on her breasts. Respondent then engaged in the threatened conduct. The next time respondent abused TM, he came into her room while she was sleeping, sucked on her breasts and digitally penetrated TM's vagina. When TM was 11 years old, respondent inserted his penis inside of TM's vagina. While

TM's mother was showering and CM and JBI were asleep in their room, respondent called TM into the living room. Respondent pulled his pants down and put TM on his lap. TM felt a "a sharp pain" inside of her vagina.

These incidents continued until TM was 12 years old, with respondent coming into TM's room nearly every weekend when he was drunk. At some point when TM was 12 years old, respondent followed her into CM and JBI's bedroom, where CM and JBI were asleep. Respondent laid TM on the floor, took off her clothes, sucked her breasts, and digitally and orally penetrated TM's vagina. TM left the room when she heard her mother calling for her. TM tried to go to her room after speaking with her mother, but she heard respondent calling for her to go back into CM and JBI's room, so she went back. Respondent again took TM's clothes off and assaulted her in the same manner just discussed. This was the last time that respondent abused TM.

About a week later, the children's mother passed away. TM, CM, and JBI went to live with their maternal grandparents. After a few months, TM and CM went to live with their father, and JBI returned to respondent's care. JBI would often visit with his grandparents for several days at a time. TM reported respondent's abuse to her father. The Van Buren Police Department became involved, and respondent was charged with numerous counts of criminal sexual conduct.[1]

On August 7, 2024, Sydney Sheyachich, the Child Protective Services (CPS) investigator assigned to JBI's case, received a referral from the Van Buren Police Department regarding JBI. On August 22, 2024, the Department of Health and Human Services (DHHS) petitioned to terminate respondent's parental rights to JBI at the initial disposition. JBI was placed with his grandparents. Following a preliminary hearing, the trial court authorized the petition. It found that it was contrary to JBI's welfare to remain in respondent's care, that DHHS had engaged in reasonable efforts to prevent removal, and allowed respondent to participate in supervised parenting visits.

A combined adjudication trial and termination hearing was held on January 29, 2025. TM testified at the adjudication portion of the termination hearing about respondent's repeated sexual abuse. Sheyachich testified that the petition was brought because of "concerns about threatened harm of sexual abuse on [JBI]," because JBI was the only child in respondent's home. The trial court found TM to be credible, found grounds for jurisdiction, and determined that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(i) (child or a sibling of the child has suffered physical injury or physical or sexual abuse and parent's act caused the physical injury or physical or sexual abuse and there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home), MCL 712A.19b(3)(j) (reasonable likelihood that child would be harmed if returned to parent's care), and MCL 712A.19b(3)(k)(ii) (parent abused the child or a sibling of the child, the abuse included criminal sexual conduct involving penetration, attempted penetration, or assault with

---

[1] Respondent was ultimately convicted of eight counts of CSC-I and four counts of CSC-II and was sentenced to 25 to 50 years' imprisonment for the CSC-I convictions and 7 to 15 years' imprisonment for the CSC-II convictions. Respondent has appealed those convictions to this Court.

intent to penetrate, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent).

The trial court then proceeded with the best-interest analysis immediately following its decision regarding jurisdiction and statutory grounds. It heard evidence on whether termination of respondent's parental rights was in JBI's best interests. Sheyachich, Ella Nemitz, the foster care worker assigned to the case, and JBI's grandmother testified. The testimony indicated that JBI had a strong bond with his grandparents, who were willing to adopt him. Respondent stipulated that there was "love, affection and strong emotional ties between [JBI] and his grandparents." The trial court considered JBI's "really good relationship," with respondent but also noted that JBI's grandparents took good care of him. It also emphasized the severity of respondent's abuse against TM and that placement with a relative weighed against termination. The trial court concluded that termination of respondent's parental rights was in JBI's best interests.

## II. TERMINATION OF PARENTAL RIGHTS—STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding clear and convincing evidence supporting statutory grounds for termination of his parental rights to JBI. We disagree.

### A. STANDARD OF REVIEW

"This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). A finding of fact is "clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (quotation marks and citation omitted). "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (quotation marks and citations omitted).

### B. ANALYSIS

To terminate parental rights, "the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "Only one statutory ground for termination need be established" to terminate a respondent's parental rights. *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012).

The trial court found there was clear and convincing evidence to establish statutory grounds for termination of respondent's rights to JBI under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> \* \* \*

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

\* \* \*

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

The trial court properly found at least one statutory ground to terminate respondent's parental rights. TM testified that starting when she was 10 and continuing until she was 12 years old, on several occasions, respondent sucked on her breasts and put his fingers, tongue, and penis in her vagina. The trial court found TM's testimony to be sincere and credible. The trial court found unpersuasive respondent's attempts to discredit TM's testimony by stating that she had a motive to lie to get out of trouble and pointing out that she was unable to provide the precise dates and times of the abuse. Deferring to the trial court's special opportunity to judge the witnesses' credibility, *Mota*, 334 Mich App at 320, the trial court's reasoning supports a finding that respondent's sexual abuse under MCL 712A.19b(3)(b)(*i*) and (k)(*ii*) was proved by clear and convincing evidence. *VanDalen*, 293 Mich App at 139.

Additionally, because TM and JBI are siblings, respondent's sexual abuse of TM supported termination of his rights as to JBI under MCL 712A.19b(3)(b)(*i*) and (k)(*ii*). Sibling is defined as "[o]ne of two or more individuals having one or both parents in common; a brother or sister." *Hudson*, 294 Mich App at 265-266 (quotation marks and citation omitted; alteration in original). TM and JBI shared the same mother, so they are siblings.

Respondent contends that there was no evidence that demonstrated a reasonable likelihood that JBI will be harmed if he is returned to respondent's care, and that the doctrine of anticipatory neglect is inapplicable. We disagree.

"The doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks and citation omitted). This Court has applied this doctrine in the context of establishing statutory grounds for termination. *In re Powers*, 208 Mich App 582, 592-593; 528 NW2d 799 (1995), superseded by statute on other grounds as stated in *In re Jenks*,

-4-

281 Mich App 514, 517 n 2; 760 NW2d 297 (2008). While the doctrine of anticipatory neglect may not be a "perfect fit" in a situation where the respondent-father sexually abused a nonbiological child, this Court still decided to apply the doctrine because respondent-father had been raising the nonbiological child as if she was his child. *Mota*, 334 Mich App at 323. As in *Mota*, respondent was a father figure to TM and she considered respondent her "step dad." *Id*. at 322. This bond did not prevent respondent from sexually abusing TM. The trial court did not clearly err by finding that the repeated sexual abuse of TM revealed a side of respondent that posed a serious danger to JBI. *Id*. at 323.

This Court has recognized that the "probative value of [an anticipatory neglect] inference is decreased by differences between the children, such as age and medical conditions." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). See also *In re LaFrance*, 306 Mich App 713, 730-732; 858 NW2d 143 (2014). The cases where this Court declined to apply the doctrine of anticipatory neglect are distinguishable. In *Kellogg*, the children had differences in history of trauma, along with behavioral and mental-health issues. *Kellogg*, 331 Mich App at 260-261. In *LaFrance*, the respondent's inability to care for a child with cerebral palsy was not indicative of her ability to care for her other children who "did not share their infant sister's medical vulnerabilities . . . ." *LaFrance*, 306 Mich App at 731.

In this case, respondent repeatedly sexually abused his stepdaughter. On one occasion, respondent sexually abused TM while JBI was present in the same room sleeping. Given the circumstances of this case, there is evidence to believe that respondent may not restrain himself from sexually abusing JBI. It was thus appropriate for the trial court to evaluate a respondent's potential risk to JBI by analyzing how respondent treated TM. *Hudson*, 294 Mich App at 266.

Because respondent placed JBI at risk of physical harm by sexually abusing TM, clear and convincing evidence supported at least one statutory ground for termination of respondent's parental rights to JBI.[2] Consequently, we are not left with a definite and firm conviction that the trial court made a mistake by finding statutory grounds to terminate respondent's parental rights. *Mota*, 334 Mich App at 320.

Next, respondent argues that he was not advised of his appellate rights between the adjudication portion and the best-interest portion of the termination hearing. We disagree. Under MCR 3.972(F), "[i]f the trial results in a verdict that one or more statutory grounds for jurisdiction has been proven, the court shall advise the respondent orally or in writing" that "(1) appellate review is available to challenge any errors in the adjudicatory process," "(2) an indigent respondent is entitled to appointment of an attorney to represent the respondent on any appeal as of right," and

---

[2] Respondent also argues that termination of his parental rights was premature and that he should have been given the opportunity to participate in services through a parent-agency treatment plan. We disagree. Because the trial court found clear and convincing evidence of abuse of a sibling and thus, aggravating circumstances, the court was not required to provide services or attempt to reunify JBI and respondent. MCR 3.977(E)(3); MCL 712A.19a(2)(a).

"(3) the respondent may be barred from challenging the assumption of jurisdiction if they do not timely file an appeal . . . ." On the record, respondent was advised of his appellate rights, albeit after the best-interest portion of the combined termination hearing. Likewise, respondent was advised of his appellate rights in writing. Respondent has not demonstrated that the trial court was required to advise him of his rights between these two portions of the termination hearing. Additionally, respondent's filing of a claim of appeal and request for appointment of appellate counsel on January 29, 2025, provides further evidence that he was properly advised of his appellate rights. Moreover, considering the timely filing of this appeal, any alleged error in notice was harmless and would not warrant reversal. See *In re Dearmon*, 303 Mich App 684, 695; 847 NW2d 514 (2014) (declining to reverse for a new adjudication trial when an alleged error was harmless). Therefore, respondent's argument is meritless.

## III. TERMINATION OF PARENTAL RIGHTS—BEST INTERESTS

Respondent argues that termination of his parental rights was not in JBI's best interests. We disagree.

## A. STANDARD OF REVIEW

We review the trial court's findings that termination is in a child's best interests for clear error. *In re White*, 303 Mich App 701, 709, 713; 846 NW2d 61 (2014). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Olive/Metts*, 297 Mich App at 41.

## B. ANALYSIS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Id*. at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted).

"The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. The trial court "should weigh all the evidence available to it." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022) (quotation marks and citation omitted). "The focus at the best-interest stage has always been on the child, not the parent." *Payne/Pumphrey/Fortson*, 311 Mich App at 63 (quotation marks and citation omitted).

Several factors weighed against termination of respondent's parental rights to JBI. First, there was a parental bond between respondent and JBI. *Olive/Metts*, 297 Mich App at 42. The trial court acknowledged this bond. Next, respondent acted appropriately during parenting visits and engaged with JBI. *White*, 303 Mich App at 714. Third, JBI's placement with his relatives, grandparents, weighs against termination. *Atchley*, 341 Mich App at 347. Contrary to respondent's assertions, the trial court recognized that JBI's relative placement weighed against termination.

Despite these factors that weigh in respondent's favor, the trial court did not clearly err in determining that termination of respondent's parental rights was in JBI's best interests. Respondent's parenting ability was concerning. *Id*. Respondent, who was a father figure to TM, repeatedly sexually abused her. As discussed above, "[t]he doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly *probative* of how that parent may treat other children." *Kellogg*, 331 Mich App at 259 (quotation marks and citation omitted; alteration in original). This doctrine also applies in the context of determining a child's best interests. *Mota*, 334 Mich App at 323. Accordingly, how respondent treated TM was indicative of how he may treat JBI. Further, respondent's abuse of TM from the time she was 10 years old until she was 12 years old is a form of domestic violence and also weighs in favor of termination of respondent's parental rights.

And, even with the bond he had with JBI, respondent fell short in his care of JBI. Some of TM's abuse occurred in JBI's presence. Additionally, Nemitz believed that JBI's dental needs had not been met while he was in respondent's care because JBI had never been to the dentist and needed an emergency root canal.

Finally, stability and permanency would be beneficial for JBI. *Olive/Metts*, 297 Mich App at 41-42. While in respondent's care, JBI had visited his grandparents for periods of 10 days at a time since his mother's death in March 2023. Considering the advantages of the child's current placement over the parent's home, JBI was "well cared for" by his grandparents. As respondent stipulated, there was "love, affection and strong emotional ties between [JBI] and his grandparents." JBI's grandparents spoke kindly to him and helped him interact with others. The grandparents' home was neat and clean. JBI had many friends at his new school. JBI was able to maintain relationships with his siblings in his grandparents' care, which he would be unable to do in respondent's care. JBI's grandparents expressed a willingness to adopt him, which favors termination. *White*, 303 Mich App at 714. The trial court's determination of JBI's best interests was not clearly erroneous. *Olive/Metts*, 297 Mich App at 41.

Respondent finally argues that the trial court erred because it failed to specifically address the best-interest factors on the record. As discussed above, the trial court explicitly recognized many of the best-interest factors during the best-interests portion of the termination hearing. Under MCR 3.977(I)(1), the trial court is required to state on the record or in writing its "[b]rief, definite, and pertinent findings and conclusions on contested matters . . . ." Respondent has failed to establish that the trial court's findings of fact and conclusions of law insufficiently addressed the contested matters.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young